IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HYPER SEARCH, LLC,                     )
                                       )
               Plaintiff,              )
                                       )
        v.                             )      C.A. No. 17-1387 (VAC) (SRF)
                                       )
FACEBOOK, INC.,                        )
                                       )
               Defendant.              )
                                       )


**FACEBOOK, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
FOR LACK OF PATENT-ELIGIBLE SUBJECT MATTER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
kjacobs@mnat.com
jying@mnat.com

*Attorneys for Defendant Facebook, Inc.*

OF COUNSEL:

Heidi L. Keefe
Mark R. Weinstein
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Phillip Morton
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Ave. NW, #700
Washington, D.C. 20004-2446
(202) 842-7800

January 10, 2018

# Table of Contents

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

III. SUMMARY OF THE ARGUMENT ........................................................................... 1

IV. STATEMENT OF FACTS ........................................................................................... 2

    A. The '219 Patent ................................................................................................. 2

    B. The '840 Patent ................................................................................................. 3

    C. The '412 Patent ................................................................................................. 5

V. ARGUMENT ............................................................................................................... 6

    A. Patent Eligibility Is a Threshold Issue Appropriate for the Pleading Stage. ......... 6

    B. Patent Eligibility Is Determined Using the Two-Step Test in *Alice*. ..................... 7

    C. *Alice* Step One – The Asserted Claims of the '219, '840, and '412 Patents Are Directed to Abstract Ideas. ................................................................................ 8

        1. The asserted '219 claims are directed to the abstract idea of storing a template, creating a document based on that template, and storing the document. ................................................................................................. 8

        2. The asserted '840 claims are directed to the abstract idea of a summarizing collected information in a visual format. .......................... 12

        3. The asserted '412 claim is directed to the abstract idea of providing information based on feedback from recipients. ...................................... 14

    D. *Alice* Step Two – The Asserted Claims of the '219, '840, and '412 Patents Add Nothing of Patentable Significance. ........................................................... 17

VI. CONCLUSION ........................................................................................................... 20

**Table of Authorities**

**Page**

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013) ................................................................. 17

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016) ................................................................. 17

*Alice Corp. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ................................................................. *passim*

*Apple Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016) ................................................................. 7

*Bilski v. Kappos*,
  561 U.S. 593 (Fed. Cir. 2010) ................................................................. 6, 19

*Cleveland Clinic Found. v. True Health Diags.*,
  859 F.3d 1352 (Fed. Cir. 2017) ................................................................. 6

*Content Extraction & Transmission v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ................................................................. *passim*

*CyberFone Sys., Inc. v. Lexmark Int'l, Inc.*,
  137 F. Supp. 3d 648 (D. Del. 2015) ................................................................. 11

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) ................................................................. 15

*Elec. Power Grp. v. Alstom*,
  830 F. 3d 1350 (Fed. Cir 2016) ................................................................. *passim*

*FairWarning IP v. Iatric Sys.*,
  839 F.3d 1089 (Fed. Cir. 2016) ................................................................. 6, 12

*Gottschalk v. Benson*,
  409 U.S. 63 (1972) ................................................................. 15

*I/P Engine v. AOL*,
  576 F. App'x 982 (Fed. Cir. 2014) ................................................................. 6

*In re Katz*,
  639 F.3d 1303 (Fed. Cir. 2011) ................................................................. 19

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ................................................................. 14, 19, 20

i

## TABLE OF AUTHORITIES

Page

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015)...........................................................................10, 11, 14, 16

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
   850 F.3d 1332 (Fed. Cir. 2015)...................................................................................11, 12, 13

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
   850 F.3d 1315 (Fed. Cir. 2017)..........................................................................................12

*Intellectual Ventures I LLC v. Manufacturers & Traders Tr. Co.*,
   76 F. Supp. 536 (D. Del. 2014)..........................................................................................18

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016)............................................................................................9

*Internet Patents v. Active Network*,
   790 F.3d 1343 (Fed. Cir. 2015)............................................................................................6

*IQS US Inc. v. Calsoft Labs, Inc.*,
   No. 16-cv-7774, 2017 WL 3581162 (N.D. Ill. Aug. 18, 2017) .............................................11

*James v. City of Wilkes-Barre*,
   700 F.3d 675 (3d Cir. 2012)..................................................................................................6

*Jedi Techs. v. Spark Networks*,
   2017 U.S. Dist. LEXIS 122313 (D. Del. Aug. 3, 2017) ........................................................20

*Mayo Collaborative Servs. v. Prometheus Labs.*,
   132 S. Ct. 1289 (2012)..........................................................................................................8

*Morsa v. Facebook, Inc.*,
   77 F. Supp. 3d 1007 (C.D. Cal. 2014),
   *aff'd*, 622 F. App'x 915 (Fed. Cir. 2015)...............................................................................20

*Neochloris, Inc. v. Emerson Process Mgmt.*,
   140 F. Supp.3d 763 (N.D. Ill. 2015) .................................................................................6, 20

*OIP Techs, Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015)............................................................................................6

*OpenTV, Inc. v. Apple, Inc.*,
   No. 14-cv-01622, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015)............................................18

*OpenTV, Inc. v. Netflix Inc.*,
   76 F. Supp 3d 886 (N.D. Cal. 2014) ...................................................................................17

<u>TABLE OF AUTHORITIES</u>

Page

*Parker v. Flook*,
    437 U.S. 584 (1978)........................................................................................... 15

*Personalized Media Commc'ns v. Amazon.com*,
    161 F. Supp. 3d 325 (D. Del. 2015) ...................................................................... 7

*RecogniCorp v. Nintendo Co.*,
    855 F.3d 1322 (Fed Cir. 2017).............................................................................. 17

*Sound View Innovations, LLC v. Facebook, Inc.*,
    204 F. Supp. 3d 655 (D. Del. 2016)....................................................................... 17

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016)............................................................................... 7

*Tele-Publishing Inc. v. Facebook, Inc.*,
    252 F. Supp. 3d 17 (D. Mass. 2017) ................................................................ 10, 18

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)......................................................... 10, 12, 14, 17

*Ultramercial v. Hulu*,
    772 F.3d 709 (Fed. Cir. 2014).................................................................................. 6

**Statutes**

35 U.S.C. § 101 ................................................................................................... 1, 7

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................. 1

## I.      INTRODUCTION

The asserted claims of the three patents-in-suit do nothing more than describe abstract ideas carried out by generic computer functionality.  The asserted claims of U.S. Patent No. 6,085,219 (the "'219 patent") describe the abstract idea of storing a template, creating a document based on that template, and storing the document.  Similarly, the asserted claims of U.S. Patent No. 6,271,840 (the "'840 patent") recite the abstract idea of providing a summary of collected information in graphical/visual form.  Likewise, U.S. Patent No. 6,792,412 (the "'412 patent") recites the abstract idea of providing information based on feedback from recipients. Although these abstract ideas are carried out on computers and/or the Internet, the asserted claims do not address or solve any unique technological problem that is only associated with those technologies.  Accordingly, under the Supreme Court's framework established in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), and as applied in scores of decisions since, the asserted claims are invalid for lack of patent-eligible subject matter under 35 U.S. C. § 101.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Hyper Search, LLC filed this patent case on October 3, 2017, against Defendant Facebook, Inc. ("Facebook").  Plaintiff has asserted the '219, '840, and '412 patents against Facebook.  (D.I. 1.)  Facebook hereby moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) and 35 U.S.C. § 101.

## III.    SUMMARY OF THE ARGUMENT

1.      The '219 patent is directed to the abstract idea of storing a template, creating a document based on that template, and then storing the created document.

2.      The '840 patent is directed to the abstract idea of providing a summary of collected information in graphical/visual form.

3.      The '412 patent is directed to the abstract idea of providing information based on feedback from recipients, which has been performed by humans without the aid of technology for decades.

4.      The '219, '840, and '412 patents lack any additional inventive concepts sufficient to confer subject matter eligibility under *Alice*.  The asserted claims recite only generic computer components, are not tied to a particular machine, and do not offer any meaningful limitation beyond implementing the abstract ideas on a computer.

## IV.    STATEMENT OF FACTS

### A.      The '219 Patent

Plaintiff asserts claims 5, 6, and 12 of the '219 patent against Facebook.  (D.I. 1, ¶ 39.) These asserted claims claim the concept storing a template, creating a document based on that template, and storing the document.  Representative Claim 5[1] recites:

> 5. A server providing a home page for plurality of clients connected via a network, comprising:
>
> template storage means for storing a plurality of templates for creating home pages corresponding to respective types of the plurality of clients;
>
> home page creating means for reading a template corresponding to a type of a requesting client from said template storage means based on type information received from the requesting client, and for creating a home page based on the template and without requiring that said user have any special knowledge of the template creation process; and

---

[1] The Federal Circuit has repeatedly approved of analyzing subject matter eligibility based on representative claims. *See Content Extraction & Transmission v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *Elec. Power Grp. v. Alstom*, 830 F. 3d 1350, 1351-52 (Fed. Cir 2016).  In this motion, Facebook has analyzed each of the claims asserted by Hyper Search.  To the extent Hyper Search asserts any other claims in this action, those claims would also be patent-ineligible for the same reasons as they are directed to the same abstract ideas and lack an inventive concept.

home page storage means for storing the home page created by said home page creating means so as to be freely accessible by the plurality of clients via the network.

(D.I. 1, Ex. A, '219 patent, claim 5.)  Claim 6 is dependent on claim 5 and adds the limitation of "wherein said home page creating means creates a home page whose display format is dependent on the type of the requesting client." (*Id.*, claim 6.)  Claim 12 is nearly identical to claim 5, as it merely claims the same system as a computer program stored on a recording medium.[2]

The asserted claims are directed to the abstract concept of storing a template, creating a document based on that template, and storing the document using conventional, well-known technology. The inventor admitted in the background of the '219 patent that home pages were well known on the Internet. (*Id.*, 1:15 ("At present, various home pages are open on the Internet.").)  The inventor further admitted that a "large amount" of application software to create home pages had been sold prior to the filing of the patent application. (*Id.*, 1:23-25.)  The inventor further stated that it was known that people could create their own home page or hire a company to create it for them. (*Id.*, 1:26-31.)  And the '219 patent does not purport to have invented any of the other generic components recited in the asserted claims, nor does it describe the operation of those components with any particularity.

## B.      The '840 Patent

The Complaint asserts claims 1 and 13 of the '840 patent against Facebook. (D.I. 1, ¶ 61.)  Representative Claim 1 recites:

1. A browser interface for rendering summary graphic information regarding at least one Uniform/Universal Resource Locator (URL), comprising:

---

[2] Instead of the "template storage means," "home page creating means," and "home page storage means" recited in claim 5, claim 12 recites "template storage code means," "home page creating code means," and "home page storage code means." (*Id.*, claims 5, 12.)

a web crawler, said web crawler receiving a first URL from a source of URLs, said web crawler retrieving data associated with said first URL and transmitting said data as output; and

a web page renderer, said web page renderer receiving as input said retrieved data associated with said first URL transmitted as output by said web crawler, said web page renderer also receiving as input image scale and format information, said web page renderer transmitting as output a reduced image of said data associated with said first URL, said web page renderer transmitting said reduced image with an embedded hyperlink embedded in said data and referring to a second URL separate from said first URL with which said data is associated; whereby

the browser interface delivers to a viewer said reduced image as a graphical summary of said data, allowing said viewer to more easily determine content presented at said URL without having said data occupy an entire computer screen.

(D.I. 1, Ex. C, '840 patent, claim 1.)  Claim 13, a method claim, claims similar scope as Claim 1.

The '840 claims are directed to the generic concept of providing a summary of collected information in a graphical or visual form and recite only conventional, well-known components for accomplishing that task.

For example, claim 1 recites a "browser interface" that provides graphic information regarding a "Uniform/Universal Resource Locator (URL)." ('840 patent, claim 1.)  The interface also includes a "web crawler" that collects "URL[s]" and a "web page renderer" that "transmit[s] as output" a "reduced image" of the webpage associated with the URL with "an embedded hyperlink" to a second URL.  (*Id.*)  The '840 patent makes clear that it did not invent these generic components.  It concedes that browsers such as MOSAIC already existed.  (*Id.*, 1:27-30). The '840 patent describes the "web crawler" as "an automatic process by which the URLs and all associated media are retrieved," (*id.*, 2:35-37), which is a generic description of the operation of a search engine.  The '840 patent admits that search engines such as ALTAVISTA, LYCOS, INFOSEEK, EXCITE, and YAHOO! were well known.  (*Id.*, 1:50-53, 2:35-37.)  It also admits that retrieving data from URLs via HTTP "is normal for web browsing under current practices,"

(*id.*, 4:62-65), and that hyperlinks were commonly used to "provide[] an enhanced user experience" because users are able "to obtain additional information on subjects associated with the web page currently being viewed." (*Id.*, 1:22-27.)  Further, the '840 patent discloses that the process of developing a "virtual image" (*e.g.*, a small thumbnail) of a webpage is performed by the "web page renderer" using "a licensed web document rendering engine **70** as is known in the art." (*Id.*, 5:61-6:9 (identifying as examples web page renderers marketed by Netscape Communications Corporation and Spyglass Corporation).)  The '840 patent states that the known web page rendering process can include placing hyperlinks to secondary URLs within the created virtual image. (*Id.*, 6:10-24.)

### C.    The '412 Patent

Hyper Search only asserts claim 1 of the '412 patent against Facebook.  (D.I. 1, ¶ 85.)

Claim 1 recites:

> 1. A system for controlling information output based on user feedback about the information comprising:
>
> a plurality of information sources providing information;
>
> at least one neural network module that selects one or more of a plurality of objects to receive information from the plurality of information sources based at least in part on a plurality of inputs and a plurality of weight values;
>
> at least one server, associated with the neural network module, that provides one or more of the objects to one or more recipients;
>
> the recipients enabling for one or more users to generate feedback about the information; and
>
> wherein the neural network module generates a rating value for a plurality of the objects at the end of an epoch, redetermines the weight values using the rating values, and selects which objects to receive information during a subsequent epoch using the redetermined weight values and the inputs for that subsequent epoch.

(D.I. 1, Ex. E, '412 patent, claim 1.)

Claim 1 is directed to the generic concept of providing information based on feedback from recipients and recites only conventional, well-known components for accomplishing that task.  For example, claim 1 recites a "neural network module" and "at least one server."  ('412, claim 1.)  As discussed further below, neural network modules and servers are generic computer components that, by themselves, do not impart an inventive concept to an otherwise abstract claim.  *See, e.g.*, *Neochloris, Inc. v. Emerson Process Mgmt.*, 140 F. Supp.3d 763, 773 (N.D. Ill. 2015) (finding patent claims including "an artificial neural network module" invalid under § 101 because neural network modules "are no more than elaborate descriptions of rudimentary computer functions" and "it is not even clear what 'an artificial neural network module' refers to besides a central processing unit—a basic computer's brain.").

## V.      ARGUMENT

### A.      Patent Eligibility Is a Threshold Issue Appropriate for the Pleading Stage.

Patent eligibility is a "threshold" issue.  *See, e.g.*, *Bilski v. Kappos*, 561 U.S. 593, 602 (Fed. Cir. 2010).  Accordingly, the Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Cleveland Clinic Found. v. True Health Diags.*, 859 F.3d 1352, 1360 (Fed. Cir. 2017).[3]  Indeed, early resolution can "spare both litigants and courts years of needless litigation."  *I/P Engine v. AOL*, 576 F. App'x 982, 996 (Fed. Cir. 2014) (Mayer, C., concurring).

At the motion to dismiss stage, the Court must "accept as true all factual assertions, but [may] disregard . . . legal conclusions. . . ."  *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012).  Averments of patentability under § 101 in the complaint are legal conclusions to

---

[3] *See also FairWarning IP v. Iatric Sys.*, 839 F.3d 1089, 1092-93 (Fed. Cir. 2016); *Internet Patents v. Active Network*, 790 F.3d 1343, 1349 (Fed. Cir. 2015); *Content Extraction & Transmission*, 776 F.3d at 1349; *Ultramercial v. Hulu*, 772 F.3d 709, 717 (Fed. Cir. 2014).

which the assumption of truth does not apply.  *See OIP Techs, Inc. v. Amazon.com, Inc.*, 788

F.3d 1359, 1362 (Fed. Cir. 2015) ("Patent eligibility under 35 U.S.C. § 101 is an issue of law").

### B.     Patent Eligibility Is Determined Using the Two-Step Test in *Alice*.

Patent eligibility is defined by 35 U.S.C. § 101, which provides that inventors of "any

new and useful process, machine, manufacture or composition of matter, or any new and useful

improvement thereof, may obtain a patent therefor."  The Supreme Court has "long held that this

provision contains an important implicit exception: Laws of nature, natural phenomena, and

abstract ideas are not patentable."  *Alice*, 134 S. Ct. at 2354 (internal quotation marks omitted).

In *Alice*, the Supreme Court reiterated the two-step test for determining the patentability

of claims covering "abstract ideas."  *Alice*, 134 S. Ct. at 2355.  In the first step, the court

determines whether the claims "are directed to a patent-ineligible concept," such as an abstract

idea.  *Id.*  "The § 101 inquiry must focus on the language of the Asserted Claims themselves."

*Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) (internal

citations omitted).  The first step looks more holistically at the claims' overall "focus" and

"character as a whole."  *Elec. Power Grp.*, 830 F.3d at 1353 (internal quotation marks and

citation omitted).  For computer-based claims, this first step asks whether the claims focus on a

"specific means or method that improves the relevant technology," which may pass muster under

§ 101, or on a "result or effect that itself is the abstract idea and merely invoke generic processes

and machinery," which cannot.  *Apple Inc. v. Ameranth, Inc.,* 842 F.3d 1229, 1241 (Fed. Cir.

2016) (internal quotation marks and citation omitted).

If claims are abstract, in the second step the Court "must look to the elements of the claim

both individually and as an ordered combination" to determine whether there is an "'inventive

concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent

in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Personalized Media Commc'ns v. Amazon.com*, 161 F. Supp. 3d 325, 329 (D. Del. 2015) (quoting *Alice*, 134 S. Ct. at 2355). To survive the second step, a claim must include "additional features" ensuring that the claim does "more than simply stat[e] the abstract idea while adding the words 'apply it.'" *Alice*, 134 S. Ct. at 2357 (quotations, citation and brackets omitted). A claim that adds only "well-understood, routine, conventional activity" does not constitute an "inventive concept." *Mayo Collaborative Servs. v. Prometheus Labs.*, 132 S. Ct. 1289, 1294 (2012); *see also Alice*, 134 S. Ct. at 2358 ("[M]ere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.").

## C.   *Alice* Step One – The Asserted Claims of the '219, '840, and '412 Patents Are Directed to Abstract Ideas.

### 1.   The asserted '219 claims are directed to the abstract idea of storing a template, creating a document based on that template, and storing the document.

The asserted independent claims of the '219 patent are directed to an abstract idea. For example, representative claim 5 recites a system for storing templates for documents, retrieving the template based on the type of requester, creating a document based on the template, and storing the document for access by the public. The abstract nature of the '219 patent can be understood by a simple analogy of placing listings in a phone book.

In the not too distant past, phone books were the "home pages" of the pre-Internet era, acting as the primary means for obtaining information about people and businesses. There were two sets of phone books—a white pages for individual persons and a yellow pages for businesses. In the yellow pages, businesses would be categorized based on the type of business. For example, bakeries, banks and beauty shops are separated into different categories:



Each business had several template options for how its advertisement would appear, such as a regular listing, a listing with the business name in bold capital letters, an in-line listing with a square drawn around it, or a graphical listing with images about the business. The business did not need to have any specialized knowledge of graphic design or typesetting in order to create any of these advertisements. The telephone company would design the yellow pages and have it printed and distributed to everyone with a telephone. Here, the asserted claims of the '219 patent follow a similar technique as the creation and distribution of the yellow pages in a phone book by retrieving the template based on the type of requester, creating a document based on the template, and storing the document for access by the public.

The abstractness of the claimed invention is clear because "with the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) (internal citation omitted). The patent specification describes the process of creating home pages as a well-known activity that is performed by human beings, either by using application software or hiring a "home page creating company." ('219, 1:23-31). The asserted claims of the '219 patent take this abstract

idea and cloak it with a wholly generic computer system to obtain functional results of storing a template, creating a document based on that template, and storing the document, with no technical detail describing how to achieve those results. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("The claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way.").

Representative claim 5 of the '219 patent is similar to the claim found abstract in the Federal Circuit's *Capital One I* decision, which was directed "to customizing web page content as a function of navigation history and information known about the user," such as the user's location or address. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369-71 (Fed. Cir. 2015) ("*Capital One I*") (claims that "consist [ ] of nothing more tha[n] the entry of data into a computer database, the breakdown and organization of that entered data according to some criteria, . . . and the transmission of information derived from that entered data to a computer user, all through the use of convention computer components, such as a database and processors, operating in a conventional manner" do not confer patent eligibility). Here, the claims relate to creating (*i.e.*, customizing) a "home page" based on "information known about the user," including the "type" of client requesting the "home page." And while not claimed, the specification describes the template being selected based on other "information known about the user," *id.*, including the user's "age group" and the "user's preference data." ('219, 5:48-56.) Similarly, numerous courts have held that patents directed at using templates to collect or generate documents, such as web pages, are abstract ideas. *Tele-Publishing Inc. v. Facebook, Inc.*, 252 F. Supp. 3d 17, 23 (D. Mass. 2017) (claims directed to the creation of a personal page for a user that set out steps to "collect and store personal information" were found to be abstract);

10

*see also CyberFone Sys., Inc. v. Lexmark Int'l, Inc.*, 137 F. Supp. 3d 648, 659 (D. Del. 2015) (finding claims directed to "entering and processing data in response to questions on forms or templates" to be an abstract idea); *IQS US Inc. v. Calsoft Labs, Inc.*, No. 16-cv-7774, 2017 WL 3581162, at *3-4 (N.D. Ill. Aug. 18, 2017) (finding a claim directed to comparing two templates "for the purposes of determining or confirming an individual's identity" to be an abstract idea.).

Likewise, in *Capital One II*, the Federal Circuit held that claims directed to "a system and method for editing XML documents" were invalid because they claimed the abstract idea of "collecting, displaying and manipulating data." *Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1339-40 (Fed. Cir. 2015) ("*Capital One II*"). The claims here are remarkably similar. Claim 5 of the '219 patent is directed to retrieving data (reading templates), manipulating data (creating home pages based on those templates), and displaying data (storing the home page so it is freely accessible on the network). Similarly, in *Electric Power Group*, the Federal Circuit held that claims related to the "collection, analysis, and display of available information" are patent-ineligible abstract ideas. *Elec. Power Grp.*, 830 F. 3d at 1351; *see also Content Extraction*, 776 F.3d at 1347 (claims drawn to the abstract idea of "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" are not patent eligible).

The other asserted claims of the '219 patent are similarly abstract. As discussed above, asserted claim 12 is effectively identical to and falls for the same reasons as claim 5. Dependent claim 6 merely claims that the display format of the home page depends on the type of client requesting it. Generically claiming that the display format based on information known about the user is insufficient to confer patent eligibility. *Capital One I*, 792 F.3d at 1369. In sum, all of the asserted claims of the '219 patent are directed to an abstract idea under *Alice* step one.

### 2. The asserted '840 claims are directed to the abstract idea of a summarizing collected information in a visual format.

The asserted claims of the '840 patent are directed to an abstract idea: summarizing collected information using graphics or images.  The limitations of the claims themselves underscore their abstract nature.  Claim 1 recites that the "graphical summary" "allow[s] said viewer to more easily determine content presented at said URL." ('840, claim 1.)  Claim 13 similarly states that the "graphical and visual summary of said data" "allow[s] rapid and preliminary review of said data by a viewer." (*Id.*, claim 13.)

As the Federal Circuit has stated, "[i]nformation as such is an intangible." *Elec. Power Grp.*, 830 F.3d at 1353 (internal citations omitted).  Thus, "the 'realm of abstract ideas' includes 'collecting information, including when limited to particular content.'" *FairWarning IP*, 839 F.3d at 1093 (quoting *Elec. Power Grp.*, 830 F.3d at 1353).  "[T]he collection, display, and manipulation of data is similarly abstract." *Capital One II*, 850 F.3d at 1340.  "[M]erely presenting the results of abstract processes of collecting and analyzing information" "is abstract as an ancillary part of such collection and analysis." *Elec. Power Grp.*, 830 F.3d at 1354; *see also Two-Way Media Ltd.* 874 F.3d at 1337 (claims found abstract for "not sufficiently describ[ing] how to achieve these results in a non-abstract way.").

The asserted claims of the '840 patent fail Step 1 for these reasons.  The "claims are directed to a combination of these abstract-idea categories," *FairWarning IP*, 839 F.3d at 1093-94, like many "other patent claims ineligible under § 101 for reciting similar data manipulation steps." *Capital One II*, 850 F.3d at 1340 (citing cases); *see also Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017) ("We have previously held other patent claims ineligible for reciting similar abstract concepts that merely collect, classify, or otherwise filter data.") (citing cases).  Collecting information and presenting it in a format that allows a

"viewer to more easily determine content," ('840, claim 1), is something humans were doing long before the invention of the Internet. *See Content Extraction*, 776 F.3d at 1347 ("data collection, recognition, and storage is undisputedly well-known" and "humans have always performed these functions."). For example, book sellers, such as the Scholastic Book Club known to legions of elementary school students, have long produced catalogs of books that include short synopses of plots alongside images of the books' covers, enabling readers to quickly determine their interest in particular books.



Likewise, in *Capital One II*, the Federal Circuit held that claims directed to "a system and method for editing XML documents" were invalid because they claimed the abstract idea of "collecting, displaying and manipulating data." *Capital One II,* 850 F.3d at 1339-40. The claims here are remarkably similar. Claims 1 and 13 of the '840 patent are directed to retrieving data (receiving a URL, retrieving the data associated with the URL and obtaining scale and format information), manipulating data (rendering the data as a reduced (smaller) image to generally resemble the data based on scale and format information and associating a second URL with the reduced image), and displaying data (transmitting the reduced image as a graphical and visual

13

summary).  Similarly, in *Electric Power Group*, the Federal Circuit held that claims related to the "collection, analysis, and display of available information" are patent-ineligible abstract ideas. *Elec. Power Grp.*, 830 F.3d at 1351.  The asserted claims of the '840 patent are abstract because "[t]he advance they purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions."  *Elec. Power Grp.*, 830 F.3d at 1354.  Tellingly, like the claims found abstract in *Two-Way Media*, nothing in the asserted claims describes any technical detail about how any of the claimed components, including for example, the web page renderer and browser interface, achieve their results.  *See Two-Way Media*, 874 F.3d at 1337.

The abstractness of this claimed idea is further reinforced by the recitation of "conventional or generic technology in a nascent but well-known environment."  *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016).  The '840 claims recite trivial, generic computer-related limitations that were well known in the prior art, such as receiving data and transmitting data and "embedd[ing] hyperlinks."  But a human could easily, if more slowly, provide the same summary of collected information using graphics or images.  Expediting this process by using computer functionality does not render this abstract concept patent eligible.  *See Capital One I*, 792 F.3d at 1370 (Fed. Cir. 2015) ("[O]ur precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea.").  For these reasons, the '840 claims recite an abstract idea under the first step of *Alice*.

### 3.    The asserted '412 claim is directed to the abstract idea of providing information based on feedback from recipients.

Claim 1 of the '412 patent is directed to the abstract idea of providing information based on feedback from recipients.  The named inventors embraced the abstract nature of the invention

by characterizing it as "[a] system for controlling information output based on user feedback about the information." ('412, claim 1; *see also id.*, Abstract, 1:8-10.)  Although the claim uses excess verbiage to make the abstract idea sound more technical than it is, when the language is analyzed in the context of the inventors' description, it is clear that the asserted claim can (and is) routinely performed by human beings without the use of a computer.  *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-73 (Fed. Cir. 2011) ("[A] method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101."); *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (method that "can be done mentally" was an abstract idea); *Parker v. Flook*, 437 U.S. 584, 586 (1978) (abstract idea found where "the computations can be made by pencil and paper calculations").

Humans have provided information to other humans based on feedback since the advent of the spoken word.  For example, every day the school librarian implements the abstract idea of the '412 patent by recommending books to students based on their preferences and feedback. The library (information source[4]) employs a librarian (neural network module[5]) and a circulation clerk (server) that provide books (objects[6]) to students (recipients[7]).  The librarian knows the preferences (inputs[8]) of the students, for example based on previous checked-out books, and how

---

[4] An "information source" refers to "various sources that provide information to the system for distribution to various recipients." ('412, 3:62-65.)

[5] A "neural network" is defined as something that "take[s] a plurality of inputs, appl[ies] those inputs to weight values and thresholds within the neural network and generate[s] outputs." ('412, 4:19-25.)

[6] "Objects" are defined in the specification as "destination[s] for placement of information" such as "electronic mail messages" and "pages."  ('412, 4:50-56.)  A "page" is "any collection of data that is presented to a user," and is not limited to data presented on a computer.  ('412, 4:1-2.)

[7] "Recipients" are defined as "any person or machine that is able to view or receive an object containing information."  ('412, 4:57-59.)

[8] "Inputs" are defined as "variable values taken by the neural network to compute output." ('412, 4:26-28.)

strongly those students feel about those preferences (weight values[9]).  The librarian selects the books for the students and the circulation clerk checks the books out to the students (at least one server . . . that provides one or more of the objects to one or more recipients).  When the books are returned at the due date (end of an epoch[10]), the students provide their opinions (feedback[11]) about the books they read to the librarian, who rates how well the students liked the books (generate a rating value) and re-evaluates how strongly to apply the students' preferences (redetermine the weight values using the rating values).  The librarian then selects new books for the students using the reevaluated application of student preferences to provide new books for the students (selects which objects to receive information during a subsequent epoch using the redetermined weight values and the inputs for that subsequent epoch).

Courts routinely find claims reciting similar filtering of information based on user preferences patent ineligible.  In *Capital One I*, the Federal Circuit found invalid claims directed to displaying web content based on a user's personal characteristics (*e.g.*, location) and navigation data (*e.g.*, time of day).  792 F.3d at 1369-71 ("[t]his sort of information tailoring is 'a fundamental . . . practice long prevalent in our system.") (quoting *Alice*, 134 S. Ct. at 2356).  Similarly, in *Sound View*, Judge Andrews held that claims "directed to the concept of offering more meaningful information to an individual based on his own preferences and the preferences of a group of people with whom he is in pre-defined relationships" was abstract.  *Sound View*

---

[9] "Weight values" are defined as "numeric designations within a certain range determining the multiplying factor for a particular input value to a node within the neural network." ('412, 4:38-41.)

[10] "Epoch" is defined as either "a set time, such as a day" or a triggering event, such as "the distribution of a particular message." ('412, 11:21-23.)

[11] "Feedback" is defined as "responses received or assigned based on predetermined algorithms corresponding to one or more outputs from the neural network." ('412, 4:61-63.)  Feedback may include "usefulness ratings, timeliness ratings, value ratings, like-dislike rating, or the like, for example." ('412, 4:63-65.)

*Innovations, LLC v. Facebook, Inc.*, 204 F. Supp. 3d 655, 662 (D. Del. 2016); *see also OpenTV, Inc. v. Netflix Inc.*, 76 F. Supp 3d 886, 893 (N.D. Cal. 2014) ("The concept of gathering information about one's intended market and attempting to customize the information then provided is as old as the saying, 'know your audience.'").

The asserted claims of the '412 patent take the abstract idea and cloak it with a wholly generic computer system to obtain functional results of providing information based on feedback from recipients.  Again, like the claims found abstract in *Two-Way Media*, the asserted claims are effectively a "black box", taking inputs and providing outputs, but failing to describe any technical detail about how the "server" or "neural network" module, for example, generate rating values, redetermine weight values or select objects based on those values.  *See, e.g., Two-Way Media*, 874 F.3d at 1337 (claims invalid for claiming functional results without sufficiently describing how to achieve the results in a non-abstract way); *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269-70 (Fed. Cir. 2016) ("The purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea.").

### D.     *Alice* Step Two – The Asserted Claims of the '219, '840, and '412 Patents Add Nothing of Patentable Significance.

The second step in the *Alice* analysis requires the Court to determine whether the claims "contain[] an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application."  *Alice,* 134 S. Ct. at 2357 (internal quotations and citation omitted).  "To save a patent at step two, an inventive concept must be evident in the claims."  *RecogniCorp v. Nintendo Co.*, 855 F.3d 1322, 1326-27 (Fed Cir. 2017); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) (patent-ineligibility focuses on the scope of the claims, not the length of the specification).  Nothing in the asserted claims of the '219, '840 and '412 patents save the claims under *Alice* step two.

**The '219 Patent:**  Here, the asserted claims of the '219 patent do not recite any inventive concept, but instead merely recite the performance of the abstract idea on well-known computer components and processes, such as a "server," "a plurality of clients," "a network," "template storage means" (*i.e.*, "storing"), and "home page creating means" (*i.e.*, "receiving" and "creating").  ('219, claim 5; *see also id.*, claim 12 (reciting similar elements incorporating "code," *e.g.*, "template storage code means").)  However, these are nothing more than generic descriptions of computer components and functions that do not rise to the level of inventive concept.  *Content Extraction*, 776 F.3d at 1347-48 (quoting *Alice*, 134 S. Ct. at 2357 (a computer in a computer implemented invention "must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry'" to be meaningful)); *see also OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015) ("The problem of how to transmit, receive, store, and organize" information "is not a creature of the Internet age: solutions to this problem date back to the invention of smoke signals.").  The '219 patent lacks an inventive step and is not patent-eligible because all it does is take an abstract idea (the collection, organization, and display of information) and apply it to the Internet ("connected via a network").  *See Tele-Publishing*, 252 F. Supp. 3d at 27 ("[T]alismanic invocations of the Internet will not alone transform an abstract idea.").

Moreover, the means-plus-function limitations in the asserted claims do not render them patent eligible where, as here, the patent specification describes nothing but generic, well known computer hardware and software components.[12]  *See Intellectual Ventures I LLC v. Manufacturers & Traders Tr. Co.*, 76 F. Supp. 3d 536, 547 (D. Del. 2014) (means language does

---

[12] '219, 3:65-5:46 (reciting generic hardware including personal computers, terminals and WWW servers)

not change the patent eligibility analysis when "only generic computers and components are disclosed in the specification") (*citing In re Katz*, 639 F.3d 1303, 1316 (Fed. Cir. 2011).)[13]

**The '840 Patent:** Similarly, the claims of the '840 patent simply describe providing a summary of information in a graphical format without adding any inventive concept related to the system used to carry that idea out. The claims simply recite conventional software components, such as a "browser interface," "URL," "web crawler," and "web page renderer," but fail to provide any inventive step that makes those components more useful to a user. ('840 patent, claim 1.) Indeed, as detailed above, the patent specification itself concedes that the recited components have long been known. Such known components include browsers such as MOSAIC, search engines such as ALTAVISTA or YAHOO!, and the "web document rendering engine[s]" provided by Netscape Communications Corp. or Spyglass Corp. that save virtual images of webpages with embedded hyperlinks intact. ('840, 1:49-52, 4:25-31, 4:62-65, 5:61-6:20.) Such "off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information" is insufficient to constitute an inventive concept. *Elec. Power Grp.*, 830 F.3d at 1355 (internal citations omitted).

**The '412 Patent:** Claim 1 of the '412 patent similarly lacks an inventive concept that would transform it into something more than an abstract idea. Claim 1 recites generic computer functionality such as a "neural network module" and a "server." ('412, claim 1.) "[M]erely limiting the use of an abstract idea 'to a particular technological environment'" does not transform a patent-ineligible abstract idea into a patent-eligible invention. *Alice*, 134 S. Ct. at 2358 (quoting *Bilski*, 561 U.S. at 610-611); *see also Jedi Techs. v. Spark Networks*, 2017 U.S.

---

[13] *See also TLI Commc'ns LLC*, 823 F.3d at 612 ("The specification fails to provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms.").

Dist. LEXIS 122313, *22 (D. Del. Aug. 3, 2017); *Morsa v. Facebook, Inc.*, 77 F. Supp. 3d 1007, 1015-16 (C.D. Cal. 2014), *aff'd*, 622 F. App'x 915 (Fed. Cir. 2015).   Neural networks were well known in the art (*see, e.g*., '412, 7:45-8:5 (listing numerous articles about neural networks)). Moreover, the inventors told the public that the alleged invention is not even limited to neural networks, but to "any other artificial intelligence agent." ('412, 19:23-27.)   In addition, courts have previously found claims reciting neural networks to be unpatentable for failing to recite more than an abstract idea.  *See, e.g.*, *Neochloris*, 140 F. Supp.3d at 773 (finding patent claims including "an artificial neural network module" invalid under § 101 because neural network modules were described as no more than "a central processing unit—a basic computer's brain."). Similarly, recitation of a generic server does not provide a transformative inventive concept.  *See TLI Commc'ns*, 823 F.3d at 615 ("Vague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention.").

In sum, as in *Electric Power*, "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Elec. Power Grp.*, 830 F.3d at 1355.  Accordingly, the '219, '840, and '412 patents add *no* inventive concept that might save them reciting the abstract ideas themselves.

## VI.    CONCLUSION

As detailed above, the claims are invalid for failing to claim eligible subject matter under 35 U.S.C. § 101, and Facebook respectfully requests that the Court grant its motion to dismiss in its entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

_____
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
kjacobs@mnat.com
jying@mnat.com

*Attorneys for Defendant Facebook, Inc.*

OF COUNSEL:

Heidi L. Keefe
Mark R. Weinstein
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
(650) 843-5000

Phillip E. Morton
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC  20004-2446
(202) 842-7800

January 10, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 10, 2018, upon the following in the manner indicated:

Timothy Devlin                                                      *VIA ELECTRONIC MAIL*
DEVLIN LAW FIRM LLC
1306 N. Broom Street, 1st Floor
Wilmington, DE  19806
*Attorneys for Plaintiff Hyper Search LLC*

Jeffrey G. Toler                                                    *VIA ELECTRONIC MAIL*
Craig S. Jepson
Benjamin R. Johnson
TOLER LAW GROUP, PC
8500 Bluffstone Cove, Suite A201
Austin, TX  78759
*Attorneys for Plaintiff Hyper Search LLC*

*/s/ Karen Jacobs*
_____
Karen Jacobs (#2881)