UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYPERMEDIA NAVIGATION LLC,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 17-cv-05383-HSG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 20 |

Hypermedia Navigation LLC ("Hypermedia") filed this action against Defendant Facebook, Inc. ("Facebook") asserting infringement of seven patents: U.S. Patent Nos. 7,383,323 (the "'323 Patent"), 7,383,324 (the "'324 Patent"), 7,424,523 (the "'523 Patent"), 7,478,144 (the "'144 Patent"), 7,769,830 (the "'830 Patent"), 8,250,173 (the "'173 Patent"), and 9,083,672 (the "'672 Patent") (collectively, the "Asserted Patents"). The Asserted Patents relate to methods and systems for organizing and displaying online search results in a linear fashion designed for the user's entertainment. *See* Dkt. No. 1 ("Compl.") ¶ 10.

On November 16, 2017, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for lack of patent-eligible subject matter under 35 U.S.C. § 101. Dkt. No. 20 ("Mot."). On December 7, 2017, Plaintiff filed an opposition to the motion. Dkt. No. 29 ("Opp."). Defendant replied on December 21, 2017. Dkt. No. 34 ("Reply"). After carefully considering the parties' arguments, the Court **DENIES** the motion.[1]

---

[1] The Court finds that this matter is appropriate for disposition without oral argument. *See* Civil L.R. 7-1. The factual background relevant to the Court's disposition is set forth in Part II of this order.

## I. LEGAL STANDARD

### A. Motion to Dismiss

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

"[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018); *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1343 (Fed. Circ. 2016) ("Indefiniteness is a question of law that we review de novo. . . subject to a determination of underlying facts."). Claim construction is not required prior to a ruling on Defendant's motion. *See Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming grant of dispositive motion prior to claim construction); *accord Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–20 (Fed. Cir. 2014).

### B. Section 101 Patent-Eligible Subject Matter

Section 101 of the Patent Act describes the scope of patentable subject matter as encompassing "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. It is well settled that laws of nature, natural phenomena, and abstract ideas are excluded from the universe of patentable subject matter. *See Alice Corp. Pty.*, 134 S.Ct. at 2354. These categories are not patent-eligible because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs.*, 132 S.Ct. 1289, 1293 (2012) (citations omitted). Allowing patent claims for laws of nature, natural phenomena, and abstract ideas would "tend to impede innovation more than it would tend to promote it," thereby thwarting the primary object of the patent laws. *Id.* at 1293. However, the Supreme Court has also recognized the need to "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice Corp. Pty.*, 134 S.Ct. at 2354.

The Supreme Court and Federal Circuit have articulated a two-part test for determining whether a claim's subject matter is patent-eligible. First, a court "determine[s] whether a claim is 'directed to' a patent-ineligible abstract idea." *Content Extraction & Transmission LLC*, 776 F.3d at 1346–47 (citing *Mayo Collaborative Servs.*, 132 S.Ct. at 1296–97). If so, the Court then "consider[s] the elements of the claim—both individually and as an ordered combination—to assess whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea." *Id.* at 1347. "This is the search for an 'inventive concept'— something sufficient to ensure that the claim amounts to 'significantly more' than the abstract idea itself." *Id.* (quoting *Mayo Collaborative Servs.*, 132 S.Ct. at 1294).

Two decisions of the Federal Circuit shed particular light on the *Alice* inquiry as applied to computer-related technology. In *Enfish, LLC v. Microsoft Corp.*, the Federal Circuit found it "relevant to ask whether the claims are directed to an improvement in computer functionality versus being directed to an abstract idea, even at the first step of the *Alice* analysis." 822 F.3d 1327, 1335 (Fed. Cir. 2016). "[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to

3

excluded subject matter.'" *Id.* (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). As set forth in *Enfish*, the key question is "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1335–36.

*In re TLI Commc'ns LLC Patent Litig.* ("*TLI*") emphasized that claims are drawn to an abstract idea if they are directed to "the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two." 823 F.3d 607, 612 (Fed. Cir. 2016). Thus, claims that describe "a new telephone, a new server, or a new physical combination of the two" are not abstract, but claims that describe a system and methods in "purely functional terms" without "any technical details for the tangible components" are abstract. *Id.*

Following *Enfish* and *TLI*, the Federal Circuit further refined the *Alice* inquiry as it applies to computer-related claims. For instance, in *McRO, Inc. v. Bandai Namco Games Am., Inc.*, the Federal Circuit defined the key inquiry as "whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." 837 F.3d 1299, 1314 (Fed. Cir. 2016). In performing this analysis, the Court "must focus on the language of the asserted claims themselves," and "complex details from the specification cannot save a claim directed to an abstract idea that recites generic computer parts." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). To determine whether the "claim's character as a whole is directed to excluded subject matter" the Court evaluates the claimed "advance" over the prior art. *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325 (Fed. Cir. 2017) (quotation omitted). The Court is to "examine earlier cases in which a similar or parallel descriptive nature can be seen—what prior cases were about, and which way they were decided." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016).

## II. ANALYSIS

Defendant cites two claims as representative of the asserted claims: dependent claim 11 of the '323 Patent and independent claim 6 of the '523 Patent. Mot. at 2.[2] Defendant argues that these representative claims (and thereby, the Asserted Patents) fail at both steps of the *Alice* inquiry. At step one, Defendant contends that dependent claim 11 recites a variation of searching and displaying content, an abstract and longstanding concept. *Id.* at 3–4, 9.[3] According to Defendant, claim 6 extends to a similarly abstract process: "displaying media, collected from elsewhere, on a user's device where the user can push 'forward' to see the next media." Mot. at 5, 9.[4] At step two, Defendant asserts that the present invention does not recite a saving inventive concept; rather, its "primary purpose is to organize information on the web" using conventional computer and internet components. Mot. at 6, 16.

Claim 10 of the '323 Patent, on which claim 11 depends, sets forth:

> A method for presenting video media elements to a subscriber station, the method comprising:
>
> receiving a request from the subscriber station to present at least one video media element to the subscriber station;
>
> selecting a plurality of video media elements for presentation to the subscriber station, the plurality of video elements including a first video media element and a plurality of second video media elements;
>
> creating a file for use by the subscriber station to create a user interface that includes:
>
> a viewing area in which the first video media element is presented; and
>
> a map area having a plurality of icons, each icon representative of a corresponding one of the plurality of second video media elements,

---

[2] Defendant may rely on certain claims as "representative" of the asserted claims. *See Intellectual Ventures I LLC*, 850 F.3d at 1330–32 & n.7. Though Plaintiff challenges Defendant's characterization of these claims as representative, *see* Opp. at 19–20, the Asserted Patents survive at this stage even if the Court considers these claims to be representative.

[3] Defendant characterizes the following class of claims as "Search and Display claims": claims 10 and 11 of the '323 Patent, claims 1, 2, and 4 of the '324 Patent, claims 40, 44, and 46 of the '144 Patent, claims 1–4, 12, 15, 16, 18, 19, 24, and 25 of the '830 Patent, and claims 15, 16, 20, 24, and 25 of the '173 Patent. *See* Mot. at 3 n.2.

[4] Defendant refers to this set of claims as the "Navigation claims," which comprise claims 6–11 of the '523 Patents, and claims 14–19 of the '672 Patent. *See* Mot. at 5 n.3.

> the plurality of icons available for selection to access corresponding video media elements; and transmitting the file to the subscriber station.

'323 Patent, 10:57–11:8. Claim 11 recites the "method of claim 10, wherein: receiving the request from the subscriber station includes receiving a search criteria; and selecting the plurality of video media elements includes selecting the plurality of video media elements based upon the search criteria." '323 Patent, 11:9–14.

Claim 6 of the '523 Patent describes:

> A method for navigating a linear Web program comprising information obtained on the World-Wide Web, the linear Web program including a plurality of media elements from a single Website stored on a remote information node, the plurality of media elements associated by a series of forward links, the method comprising:
>
> sending data from the remote information node to display, on a display device at a user location, a first media element of the plurality of media elements from the single Website, the first media element having a forward link to a second media element of the linear Web program, and to display a forward link indicator on the display device;
>
> receiving a first signal in response to an action of the user indicating an activation of the forward link indicator, and in response to the activation of the forward link indicator, sending data from the remote information node to display on the display device, the second media element of the linear Web program, the second media element having a forward link to a third media element of the linear Web program; and
>
> receiving a second signal in response to an action of the user indicating an activation of the forward link indicator, and in response to the activation of the forward link indicator, sending data from the remote information node to display on the display device, the third media element of the linear Web program.

'523 Patent, 10:35–62.

The present invention survives at step one of the *Alice* inquiry. Recently, in *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, the Federal Circuit rejected the defendant's Section 101 challenge to a patent disclosing improved display interfaces geared particularly for electronic devices with small screens. *See* 880 F.3d 1356, 1359–62 (Fed. Cir. 2018). Specifically, the defendant argued on appeal that the claims before the court were directed to the "abstract idea of

an index." *Id.* at 1362. The Federal Circuit disagreed, concluding instead that the claims were similar to those found patent-eligible under *Enfish* because they were "directed to an improved user interface for computing devises." *Id.* at 1362 (citing 822 F.3d at 1336). In reaching that holding, the Court observed that: "[a]lthough the generic idea of summarizing information certainly existed prior to the invention, these claims are directed to a particular manner of summarizing and presenting information in electronic devices." *Id.*

So too here. Though Defendant may be correct that the concepts of searching, displaying, and organizing information are longstanding, Plaintiff adequately alleges that the present invention improves a specific online search mechanism by creating web programs that are geared towards entertaining and presenting the user with desirable information in a new way: through "linearly linked websites." *See* Opp. at 13–15; '323 Patent, 2:34–37. In addition, claim 6's recitation of a forward link indicator for navigation is designed to "improve the retrieval and presentation time" of search results. '323 Patent, 6:33–67.[5] As in both *Enfish* and *Core Wireless*, the functional improvements found in the representative claims—which recite a novel linear navigation method directed to the entertainment of the user—constitute a specific technological improvement that was not present in the prior art. *See Core Wireless Licensing S.A.R.L.*, 880 F.3d at 1362 (citing *Enfish*, 822 F.3d at 1336). Even if Defendant is correct that linear search and display systems could be performed in the absence of a computer, it is Plaintiff's novel and improved application of that method to the search medium that renders the invention patent-eligible under Section 101.

This specific technological improvement also distinguishes the Asserted Patents from those found invalid in *BSG Tech LLC v. BuySeasons, Inc.*, No. 17-1980 (Fed. Cir. Aug. 15, 2018). In that case, the Federal Circuit concluded that the asserted claims were directed to "the abstract idea of considering historical usage information while inputting data." *See BSG Tech LLC*, No. 17-1980 at *8. In contrast to the alleged interface invention in this case, the plaintiff in *BSG Tech* did "not purport to have invented database structures that allow database users to input item data as a series of parameters and values." *Id.* Furthermore, the patent's specification made "clear that

---

[5] The Asserted Patents share the same specification. As in Plaintiff's opposition, this order cites to the specification of the '323 Patent. *See* Opp. at 4 n.8.

7

such databases predate[d] the claimed invention." *Id.* The court accordingly concluded that "the recitation of a database structure slightly more detailed than a generic database d[id] not save the asserted claims at step one." *Id.* at 9. Here, however, the Asserted Patents are different in that they explain both how: (1) the prior art, which is described in greater detail below, lacked an efficient web search program geared towards the entertainment of the user, *see* '323 Patent, 1:25–51; and (2) the asserted claims recite a specific *technological* advance: the new web program that includes an improved user interface, *cf. BSG Tech LLC*, No. 17-1980 at *12 ("The claims do not recite any improvement to the way in which such databases store or organize information analogous to the self-referential table in *Enfish* or the adaptable memory caches in *Visual Memory*.").

But even if Defendant were correct at step one, the Court is persuaded at step two that the claimed *combination* of elements renders the present invention patent-eligible by reciting a saving inventive concept. *See Content Extraction & Transmission LLC*, 776 F.3d at 1347. Like the claims held patent-eligible by the Federal Circuit in *Berkheimer*, the representative claims show that the present invention "eliminates redundancies" and "improves system efficiency" that existed in conventional online search programs. *See* 881 F.3d at 1369. Specifically, the representative claims set forth a linear method of searching and displaying content in which "a series of exclusive forward and backward links" direct the user to a desirable web result. *See* Opp. at 5–6; *see also* '323 Patent, 3:13–18. This method provides users with sought after information more quickly, and also entertains them in the process. *See id.*; '323 Patent, 1:25–51. In that regard, the specification details the present invention's improvements to the state of the art at the time the patent was filed. *See Berkheimer*, 881 F.3d at 1369 (observing the same, and noting that "[t]he specification describes an inventive feature that stores parsed data in a purportedly unconventional manner"). According to the specification, traditional online search programs did not have a way of filtering content so as to present hyperlinks in a streamlined "linear" fashion; rather, websites offered only a cursory view of material that the user might find interesting. '323 Patent, 1:25–51. Thus, users were often overwhelmed by (and had difficulty parsing) the quantity of online information presented. *See id.* Website quality and content was, moreover, poorly vetted for a

1 specific user's needs. *See id.* Hence, the present invention "addresses the need for creating and
2 navigating entertaining Web programs that filter out unwanted information and present desired
3 information in a series of linearly linked web sites." '323 Patent, 2:34–37. This improvement is
4 captured in the representative claims, and is sufficient to show at this stage that the Asserted
5 Patents claim more than "well-understood, routine, and conventional activities." *See Berkheimer*,
6 881 F.3d at 1369–70; *Content Extraction & Transmission LLC*, 776 F.3d at 1347.

7 Defendant argues that the asserted claims are not sufficiently specific to impart an
8 inventive concept, as these claims omit any elements specifying how media files are displayed or
9 organized. *See* Mot. at 16–17. But even Defendant's characterization of dependent claim 11
10 shows that the claimed combination of ordered steps is adequately detailed to present an
11 unconventional method. *See id.* at 3 ("[T]he steps of representative claim 11 of the '323 boil down
12 to (1) receiving a search request from a user for a video; (2) selecting multiple video files based on that
13 search; (3) creating a file for showing the video that has; (4) a place to show the first video, and (5) a
14 place to display icons representative of the rest of the videos; and (6) sending that file to the user.").
15 So too with claim 6 of the '523 Patent, which Defendant admits creates an online "guided tour" that
16 allows the user to navigate forward and backward across web content. *See* Mot. at 15. Plaintiff has
17 satisfactorily alleged that this was not true of traditional search methods at the time the patent was
18 filed. Compl. ¶¶ 7–10 (providing images of search result interfaces in 1999). Though Defendant is
19 correct that the asserted functional improvements are computer-implemented, the claimed method adds
20 value to that medium so as to render an otherwise abstract concept patent-eligible. *See Berkheimer*,
21 776 F.3d at 1369; *Enfish*, 822 F.3d at 1335; *cf. BSG Tech LLC*, No. 17-1980 at *17 ("Here, the
22 only alleged unconventional feature of BSG Tech's claims is the requirement that users are guided
23 by summary comparison usage information or relative historical usage information. But this
24 simply restates what we have already determined is an abstract idea."). Finally, the Court does not
25 need to rely on either party's depiction of potential "caching" claims, *see* Reply at 4, given that the
26 claimed search and display and navigation features are sufficiently specific to overcome
27 Defendant's Section 101 challenge under Rule 12(b)(6).
28 //

### III. CONCLUSION

For these reasons, Defendant's motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: 8/16/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge