## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HYPER SEARCH, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 17-1387-CFC-SRF |
| | ) |
| FACEBOOK, INC., | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

Presently before the court in this patent infringement action is defendant Facebook, Inc.'s

("Facebook") motion to dismiss for failure to state a claim upon which relief can be granted

pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 9) For the reasons that follow, I

recommend that the court grant Facebook's motion to dismiss.

### II.   BACKGROUND

#### A.   Parties

Plaintiff Hyper Search LLC ("Hyper Search") is a Texas limited liability company with

its principal place of business in Plano, Texas. (D.I. 1 at ¶ 1)  Facebook is a Delaware

corporation with its principal place of business in Menlo Park, California.  (*Id.* at ¶ 2)

#### B.   Facts

Hyper Search asserts claims for infringement regarding U.S. Patent Nos. 6,085,219 ("the

'219 patent"), 6,271,840 ("the '840 patent"), and 6,792,412 ("the '412 patent") (collectively, the

"patents-in-suit"). (D.I. 1)

Hyper Search asserts claims 5, 6, and 12 of the '219 patent against Facebook. (D.I. 1 at ¶

39)  The '219 patent is titled "Home Page Creating Systems Apparatuses and Program Recording

Mediums, and Home Page Displaying Systems and Program Recording Mediums," and is directed to a system that permits a user to create a home page automatically based on answer data, without having to have any special knowledge. ('219 patent, abstract) Representative claim 5 recites:

> 5. A server providing a home page for plurality of clients connected via a network, comprising:
>
> Template storage means for storing a plurality of templates for creating home pages corresponding to respective types of the plurality of clients;
>
> Home page creating means for reading a template corresponding to a type of a requesting client from said template storage means based on type information received from the requesting client, and for creating a home page based on the template and without requiring that said user have any special knowledge of the template creation process; and
>
> Home page storage means for storing the home page created by said home page creating means so as to be freely accessible by the plurality of clients via the network.

('219 patent, col. 13:4-19) Claim 6 depends from claim 5: "the server according to claim 5, wherein said home page creating means creates a home page whose display format is dependent on the type of the requesting client." (*Id.*, col. 13:20-22)

Hyper Search asserts claims 1 and 13 of the '840 patent against Facebook. (D.I. 1 at ¶ 61) The '840 patent is entitled "Graphical Search Engine Visual Index," and is directed to "[a] visual index method [which] provides graphical output from search engine results or other URL lists." ('840 patent, abstract) Representative claim 1 recites:

> 1. A browser interface for rendering summary graphic information regarding at least one Uniform/Universal Resource Locator (URL), comprising:
>
> A web crawler, said web crawler receiving a first URL from a source of URLs, said web crawler retrieving data associated with said first URL and transmitting said data as output; and
>
> A web page renderer, said web page renderer receiving as input said retrieved data associated with said first URL transmitted as output by said web crawler, said web page renderer also receiving as input image scale and format information, said web

page renderer transmitting as output a reduced image of said data associated with said first URL, said web page renderer transmitting said reduced image with an embedded hyperlink embedded in said data and referring to a second URL separate from said first URL with which said data is associated; whereby

The browser interface delivers to a viewer said reduced image as a graphical summary of said data, allowing said viewer to more easily determine content presented at said URL without having said data occupy an entire computer screen.

('840 patent, col. 11:17-39)

Hyper Search asserts claim 1 of the '412 patent against Facebook. (D.I. 1 at ¶ 85) The

'412 patent is entitled "Neutral Network System and Method for Controlling Information Output

Based on User Feedback," and claims "[a] system and method for controlling information output

based on user feedback about the information that includes a plurality of information sources."

('412 patent, abstract) Claim 1 recites:

1. A system for controlling information output based on user feedback about the information comprising:

A plurality of information sources providing information;

At least one neural network module that selects one or more of a plurality of objects to receive information from the plurality of information sources based at least in part on a plurality of inputs and a plurality of weight values;

At least one server, associated with the neural network module, that provides one or more of the objects to one or more recipients;

The recipients enabling for one or more users to generate feedback about the information; and

Wherein the neural network module generates a rating value for a plurality of the objects at the end of an epoch, redetermines the weight values using the rating values, and selects which objects to receive information during a subsequent epoch using the redetermined weight values and the inputs for that subsequent epoch.

('412 patent, col. 19:49-67)

3

### C. Procedural History

Hyper Search initiated this action on October 3, 2017. (D.I. 1) On January 10, 2018, Facebook filed the pending motion to dismiss the complaint for lack of patent-eligible subject matter pursuant to 35 U.S.C. § 101. (D.I. 9) The court heard oral argument on June 11, 2018.

### III. LEGAL STANDARD

#### A. Motion to Dismiss under Rule 12(b)(6)

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. PLANCO Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

When determining whether dismissal is appropriate, the court must take three steps.[1] *See*

---

[1] Although *Iqbal* describes the analysis as a "two-pronged approach," the Supreme Court observed that it is often necessary to "begin by taking note of the elements a plaintiff must plead to state a claim." 556 U.S. at 675, 679. For this reason, the Third Circuit has adopted a three-pronged approach. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must identify the elements of the claim. *Iqbal*, 556 U.S. at 675. Second, the court must identify and reject conclusory allegations. *Id.* at 678. Third, the court should assume the veracity of the well-pleaded factual allegations identified under the first prong of the analysis, and determine whether they are sufficiently alleged to state a claim for relief. *Id.*; *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The third prong presents a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Iqbal*, 556 U.S. at 663-64; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Patent-Eligible Subject Matter under 35 U.S.C. § 101

Section 101 provides that patentable subject matter extends to four broad categories, including "new and useful process[es], machine[s], manufacture, or composition[s] of matter." 35 U.S.C. § 101; *see also Bilski v. Kappos*, 561 U.S. 593, 601 (2010) ("*Bilski II*"); *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). The Supreme Court recognizes three exceptions to the statutory subject matter eligibility requirements: "laws of nature, physical phenomena, and abstract ideas." *Bilski II*, 561 U.S. at 601 (internal quotations omitted). In this regard, the Supreme Court has held that "[t]he concepts covered by these exceptions are 'part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none.'" *Id.* at 602 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)). At issue in the present case is the third category pertaining to abstract ideas, which "embodies the

longstanding rule that an idea of itself is not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (internal quotations and citation omitted).

In *Mayo Collaborative Servs. v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012), the Supreme Court articulated a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. In accordance with the first step of the *Alice* test, the court must determine whether the claims at issue are directed to a patent-ineligible concept. *See id.* If so, the court must turn to the second step, under which the court must identify an "'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* (internal citation omitted). The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

At step 1, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter."). However, "courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (internal quotations and citations omitted).

At step 2, the Federal Circuit has instructed courts to "look to both the claim as a whole and the individual claim elements to determine whether the claims contain an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *McRO*, 837 F.3d at 1312 (internal brackets and quotation marks omitted). Under the step 2 inquiry, the court must consider whether claim elements "simply recite 'well-understood, routine, conventional activit[ies].'" *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2359) (alteration in original). "Simply appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (internal quotation marks omitted). "Whether at step one or step two of the *Alice* test, in determining the patentability of a method, a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps." *Enfish, LLC v. Microsoft*, 822 F.3d 1327, 1338 (Fed. Cir. 2016).

The Federal Circuit has looked to the claims as well as the specification in performing the "inventive concept" inquiry. *See Affinity Labs.*, 838 F.3d at 1271 ("[N]either the claim nor the specification reveals any concrete way of employing a customized user interface."). "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350. In *Bascom*, the Federal Circuit held that "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself," but nonetheless determined that an ordered combination of these limitations was adequately alleged to be patent-eligible under step 2 at the pleading stage. *Id.* at 1349.

The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention" under step two. *Alice*, 134 S. Ct. at 2358. "Given the ubiquity of computers . . . wholly generic computer implementation is not generally the sort of additional feature that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself." *Id.* (internal quotations and citations omitted). For the second step of the *Alice* framework, the machine-or-transformation test may provide a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) (citing *Bilski II*, 561 U.S. at 604 and *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012)). A claimed process can be patent-eligible under § 101 consistent with the machine-or-transformation test if it "uses a particular machine or apparatus" and does not "pre-empt[2] uses of the principle that do not also use the specified machine or apparatus in the manner claimed." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008), *aff'd sub nom.*, *Bilski II*, 561 U.S. 593 (2010).

Patent eligibility under § 101 is a question of law suitable for resolution on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 610 (Fed. Cir. 2016) (applying regional circuit law to the de novo review of

---

[2] At both steps one and two of the *Alice* inquiry, the Federal Circuit considers the issue of preemption to determine whether a patent is not directed to a specific invention and instead would monopolize "the basic tools of scientific and technological work," thereby "imped[ing] innovation more than it would tend to promote it" and "thwarting the primary object of the patent laws." *Alice*, 134 S. Ct. at 2354; *see also McRO*, 837 F.3d at 1315 (applying the doctrine of preemption and concluding that a claim was patent-eligible at step 1); *Bascom*, 827 F.3d at 1350 (applying the doctrine of preemption and concluding that a claim was patent-eligible at step 2). "[T]he focus on preemption goes hand-in-hand with the inventive concept requirement." *Jedi Techs., Inc. v. Spark Networks, Inc.*, C.A. No. 16-1055-GMS, 2017 WL 3315279, at *8 n.2 (D. Del. Aug. 3, 2017) (quoting *Tenon & Groove, LLC v. Plusgrade S.E.C.*, C.A. No. 12-1118-GMS, 2015 WL 1133213, at *4 (D. Del. Mar. 11, 2015)). However, "the absence of complete preemption does not demonstrate patent eligibility." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015).

a district court's patent eligibility determination under § 101 on a Rule 12(b)(6) motion to dismiss). However, the Federal Circuit recently emphasized that, "like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact[]" that goes beyond what was simply known in the prior art. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). On a motion to dismiss, this question of fact, like all questions of fact, must be resolved in the plaintiff's favor. *Aatrix Software, Inc.*, 882 F.3d at 1128.

## IV. DISCUSSION

First, as a preliminary matter, Hyper Search argues that the asserted claims must be interpreted before they can be assessed under § 101. (D.I. 12 at 9-10) However, "claim construction is not an inviolable prerequisite to a validity determination under § 101," even for means-plus-function claims. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming the district court's dismissal of the patent claims as "patent-ineligible under § 101 at the pleading stage"); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1360-62 (Fed. Cir. 2015) (affirming dismissal on the pleadings); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014) (affirming Rule 12(b)(6) dismissal); *Modern Telecom Sys. LLC v. Juno Online Servs., Inc.*, 2015 WL 1240182, at *7 (C.D. Cal. Mar. 17, 2015) ("[A]fter *Alice*, courts have frequently decided patent-eligibility on the pleadings.").

Here, Hyper Search does not identify any claim construction issues that need resolution or any facts in dispute. (*See* D.I. 12) Nonetheless, it argues that a claim construction hearing is

necessary for the asserted claims because they are means-plus-function claims under 35 U.S.C. § 112(f).[3] (D.I. 12 at 9-10)  However, Hyper Search does not identify any claim construction issues that need resolution or any facts in dispute that would affect the court's analysis.[4]  (*See* D.I. 12); *Smart Software, Inc. v. PlanningEdge, LLC*, 192 F. Supp. 3d 243, 247 (D. Mass. 2016) (deciding § 101 eligibility without claim construction where plaintiff failed to offer any specific claim construction issues that would affect the analysis).  Other courts have dismissed infringement suits involving patents with means-plus-function claims on the pleadings based on § 101 eligibility.  *See, e.g.*, *TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*, 2015 WL 5311059, at *6, *9 (S.D. Tex. Sept. 11, 2015); *In re TLI Commc'ns LLC Patent Litig.*, 87 F. Supp. 3d 773, 804-05 (E.D. Va. 2015).  Therefore, claim construction is not necessary and determining whether the patents-in-suit are patent-eligible under § 101 is appropriate at this stage of the proceedings.

## A. *Alice* Step One

Applying the first step of the *Alice* framework to the asserted claims of the patents-in-suit, the claims focus on a "result or effect that itself is [an] abstract idea and merely invoke[s]

---

[3] "Element in claim for a combination.—An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  35 U.S.C. § 112(f).

[4] Hyper Search filed a notice of subsequent authority to highlight to Federal Circuit's recent decision in *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018), in support of its assertion that claim construction should be conducted prior to granting a Rule 12(b)(6) motion.  (D.I. 16)  However, the Federal Circuit did not reach the issue of whether the district court erred in granting the motion to dismiss without claim construction.  *Aatrix*, 882 F.3d at 1125 ("We have some doubt about the propriety of [granting the motion to dismiss without claim construction] in this case, but need not reach that issue because it did err when it denied leave to amend without claim construction . . . .").  *Aatrix* does not alter the recommendation.

generic processes and machinery." *Apple Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016). Hyper Search does not directly dispute that the ideas reflected in the asserted claims are abstract, but rather argues that the patents-in-suit are patent-eligible because their specifications provide "improvements in computer functionality." (D.I. 12 at 3-8)

### 1. The '219 patent

Hyper Search alleges that the '219 patent describes and claims an improved home page creating system, which overcomes at least three disadvantages of prior systems: (1) the '219 patent describes a home page display system that reduces the time required for sending a home page; (2) it describes a system that does not require users to have any special knowledge of the home page template creation process; and (3) it describes a system that creates a home page easily. (D.I. 12 at 3) (citing '219 patent at col. 1:50-3:25)

The '219 patent claims are directed to the abstract idea of storing a template, creating a document based on that template, and storing the document for access by the public. "With the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with a pen and paper." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016). Hyper Search does not identify any concrete patent-eligible invention tied to the language of the claims. (D.I. 12 at 3-5, 12-13) The patent specification describes the process of creating home pages as a well-known activity that is performed by human beings, either by using application software or hiring a "home page creating company." ('219 patent at col. 1:23-31)

Nor do the asserted claims improve the way a computer functions. The claims use a wholly generic computer system to obtain functional results of storing a template, creating a document based on that template, and storing the document, with no technical detail describing

how to achieve those results. The '219 patent's specification makes clear that if a user does not have any "special knowledge" of the home page template creation process of the claims, the user can hire a company to prepare the home page for them. ('219 patent at col. 1:25-31) The claims of the '219 patent "do[ ] not sufficiently describe how to achieve" the results of creating a home page from a template "in a non-abstract way." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). Essentially, the claims state to "do it on a computer." *Apple Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1242 (Fed. Cir. 2016) (internal citations omitted).

Representative claim 5 of the '219 patent is similar to the claim found abstract in *Capital One*, which was directed to "customizing web page content as a function of navigation history and information known about the user," such as the user's location or address. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369-71 (Fed. Cir. 2015) (claims that "consist[ ] of nothing more tha[n] the entry of data into a computer database, the breakdown and organization of that entered data according to some criteria, . . . and the transmission of information derived from that entered data to a computer user, all through the use of conventional computer components, such as a database and processors, operating in a conventional manner" do not confer patent eligibility). Here, the claims relate to creating a "home page" based on information known about the user, including the type of client requesting the "home page" and his or her "answer data." ('219 patent at col. 2:15-20) The specification describes the template being selected based on other information known about the user, including the user's "age group" and the "user's preference data." ('219 patent at col. 5:48-56) Other courts have held that patents directed to using templates to collect or generate documents, such as web pages, are abstract ideas. *See Tele-Publishing Inc. v. Facebook, Inc.*, 252 F. Supp. 3d 17,

23 (D. Mass. 2017) (claims directed to the creation of a personal page for a user that set out steps to "collect and store personal information" were found to be abstract); *CyberFone Sys., LLC v. Lexmark Int'l, Inc.*, 137 F. Supp. 3d 648, 659 (D. Del. 2015) (finding claims directed to "entering and processing data in response to questions on forms or templates" to be an abstract idea).

Claim 12 is effectively identical to claim 5 and is therefore similarly abstract. (*See* '219 patent at col. 14:15-35) Dependent claim 6 claims that the display format of the home page depends on the type of client requesting it. (*See id.* at col. 13:20-22) Generically claiming that the display format adapts based on information known about the user is insufficient to confer patent eligibility. *See Capital One*, 792 F.3d at 1369.

Hyper Search also relies on *McRO* and *Finjan* to bolster its arguments for patent eligibility for all of its patents, but both of these cases are distinguishable. The claimed invention in *McRO* recited "specific rules" or algorithms for a computer to "achieve an improved technological result" in computer animation, redirecting the animator's process from subjective determinations to specific, limited mathematical rules. *McRO*, 837 F.3d at 1314-16. The Federal Circuit concluded that the claimed invention went "beyond merely organizing existing information into a new form or carrying out a fundamental economic practice," and instead used specific rules to render information in a specific format used to create desired results. *Id.* at 1315 (internal quotation marks, brackets, and citations omitted). Here, the claims do not provide technical details, rules, or algorithms as to how to store a template, create a document based on that template, and store the document.

In *Finjan*, the court upheld that subject matter eligibility of claims directed to specific computer based problems of behavior-based virus scanning – something which only occur on computers – because they "employ[] a new kind of file that enables a computer security system

to do things it could not do before," including "accumulat[ing] and utiliz[ing] newly available, behavior-based information about potential threats." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018). The court emphasized that the *Finjan* claims described specifically "how" to achieve the claimed result by "recit[ing] specific steps – generating a security profile that identifies suspicious code and linking it to a downloadable – that accomplish the desired result." *Id.* Again, the claims here are distinguishable because the method described utilizes well-known technology and fails to provide details as to how that method is performed.

Therefore, the '219 patent is directed towards an abstract idea and must be analyzed under *Alice* step two.

## 2. The '840 patent

Facebook argues that the asserted claims of the '840 patent are directed to the abstract idea of summarizing collected information using graphics or images. (D.I. 10 at 12) Hyper Search argues that the '840 patent claims improvements in computer functionality – specifically, claim 1 and claim 13 are directed to a system that improved browser technology by creating thumbnail and other summary graphic information to accompany hyperlinks that result at the end of a search engine search. (D.I. 12 at 7-9) (citing '840 patent at col. 11:17-39, 14:31-48)

Claim 1 recites that the "graphical summary" "allow[s] said viewer to more easily determine content presented at said URL." ('840 patent, col. 11:35-40) Claim 13 similarly states that the "graphical and visual summary of said data" "allow[s] rapid and preliminary review of said data by a viewer." (*Id.* at col. 14:45-48) Therefore, claims 1 and 13 of the '840 patent are directed to the abstract idea of retrieving data, manipulating data, and displaying data. Collecting information and presenting it in a format that allows a "viewer to more easily determine content" is something humans did before the invention of the Internet. (*Id.* at col.

14

11:35-40) *See also Content Extraction*, 776 F.3d at 1347 ("The concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions."). This collection and presentation of data also differs from the more technical method described by the purported invention in *McRO*, which utilized specific rules and algorithms. *McRO*, 837 F.3d at 1314-16. In *Capital One*, the Federal Circuit held that claims directed to "a system and method for editing XML documents" were invalid because they claimed the abstract idea of "collecting, displaying, and manipulating data." *Capital One*, 850 F.3d at 1339-40. In *Elec. Power Grp.*, the Federal Circuit held that claims related to the "collection, analysis, and display of available information" are patent-ineligible abstract ideas. *Elec. Power Grp.*, 830 F.3d at 1351.

Hyper Search asserts that the '840 patent describes the alleged improvement of "making and presenting 'Thumbnails'" on a computer. (D.I. 12 at 7) However, the word "thumbnail" does not appear anywhere in the claims of the '840 patent, and the patent recognizes that prior art software already existed to create them. ('840 patent at col. 5:61-6:24) Hyper Search also argues that the '840 improves computer technology because it can "instantaneously transport the viewer to a different location in cyber space" and is directed to a "system that improved browser technology by creating thumbnail and other summary graphic information to accompany hyperlinks that result at the end of a search engine search." (D.I. 12 at 8, 16) However, no such language or features are established in the claim language. And although the independent claims state that they "allow[] the viewer to more easily determine content . . . without having [the] data occupy an entire computer screen," presenting information in less space is a type of human activity of collecting, analyzing and displaying information that courts have found patent-

ineligible. (D.I. 12 at 16) (internal quotations omitted) (citing '840 patent at col. 11:16-39) *See also Elec. Power Grp.*, 830 F.3d at 1351.

The asserted claims also recite conventional and generic computer-related limitations that were well known in the prior art, such as receiving data, transmitting data, and embedding hyperlinks – unlike the innovative technology used in *Finjan. See Finjan*, 879 F.3d at 1305 ("[T]he method of claim 1 employs a new kind of file that enables a computer security system to do things it could not do before."). This process could be performed by a human, albeit at a slower rate, but expediting a process by using computer functionality does not render an abstract concept patent eligible. *Capital One*, 792 F.3d at 1370 (noting that "precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea"). Even if the court were to conclude that there was an improvement to computer functionality, such improvements would be "benefits that flow from performing an abstract idea in conjunction with . . . well-known [computer functionalities]." *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018).[5]

Therefore, the '840 patent is directed towards an abstract idea and the court must turn to step two of the *Alice* analysis.

### 3. The '412 patent

Facebook argues that claim 1 of the '412 patent is directed to the abstract idea of providing information based on feedback from recipients. (D.I. 10 at 14) Hyper Search argues that the system of claim 1 is an improvement in computer capability because the system controls information output based on user feedback about the information itself. (D.I. 12 at 15) Then the system selects one or more objects from which to receive information based upon certain

---

[5] Facebook has provided the court with this subsequent authority. (D.I. 18)

weights, and a server provides one or more objects to a recipient. (*Id.*) The system then generates rating values for some of the objects at the end of a predetermined period and redetermines the weight values using the rating values. (*Id.*) (citing '412 patent at col. 19:48-67) Hyper Search contends that this is a specific process that is new, performed by a computer, iterative, and adaptive. (*Id.*) (citing '412 patent at col. 19:49-67) Additionally, Hyper Search describes how the claim language is "closely tethered to the technology that created the problem." (*Id.*)

Hyper Search filed a notice of supplemental authority on August 22, 2018 to draw our attention to *Hypermedia Navigation LLC v. Facebook, Inc.*, 2018 WL 3932434 (N.D. Cal. Aug. 16, 2018), a recently decided case from the Northern District of California. (D.I. 19) The court in *Hypermedia* determined that the claims at issue, though organizing information on the Internet and assisting in selecting video media elements based on search criteria, were non-abstract and patent eligible under § 101. *Hypermedia*, 2018 WL 3932434, at *3-4. The court so concluded because the plaintiff "adequately allege[d] that the present invention improves a specific online search mechanism . . . in a new way: through 'linearly lined websites.'" *Id.* at *4. Hyper Search, on the other hand, has not provided this court with sufficient allegations that its inventions solve problems in the prior art "in a new way." Hyper Search's claim relies on technology that was well-known at the time and fails to explain how its claimed idea recites an improvement in computer technology. ('412 patent, col. 7:45-8:5, 19:23-27)

Claims directed to providing information based on feedback have previously been held patent-ineligible by this court. *See Sound View Innovations, LLC v. Facebook, Inc.*, 204 F. Supp. 3d 655 (D. Del. 2016). In *Sound View*, the court held that claims "directed to the concept of offering more meaningful information to an individual based on his own preferences and the

preferences of a group of people with whom he is in pre-defined relationships" were abstract. *Id.* at 662. The patent specification itself states that it is a system of delivering information that "selects information for delivery based on indications of what subject matter a recipient is likely to find useful." ('412 patent at col. 2:10-14) Courts routinely find such concepts abstract, because "the concept of gathering information about one's intended market and attempting to customize the information then provided is as old as the saying, 'know your audience.'" *OpenTV, Inc. v. Netflix Inc.*, 76 F. Supp. 3d 886, 893 (N.D. Cal. 2014).

The asserted claims of the '412 patent implement a generic computer system to obtain functional results of providing information based on feedback from recipients. Hyper Search does not show how the system of claim 1 is an improvement in computer capability. (*See* D.I. 12 at 5-6) Hyper Search cites to "electronic mail filtering systems" and improving prior art "search engines" described in the '412 patent's description of the prior art, but does not attempt to correlate these alleged improvements to the claims. (D.I. 12 at 5-6) This lack of specificity sets the asserted claims apart from the claim language deemed sufficient to establish patent eligibility in the Federal Circuit's recent decisions, such as *Enfish*. The claims in *Enfish* reciting a self-referential table for a computer database were deemed non-abstract and patent-eligible under § 101 because the focus of the claims was on an improvement to computer functionality itself. *Enfish*, 822 F.3d at 1336-37 (observing that "the self-referential table functions differently than conventional database structures" because it "does not require a programmer to preconfigure a structure to which a user must adapt data entry," and offers "increased flexibility, faster search times, and smaller memory requirements.").

Accordingly, because the asserted claims are directed to an abstract idea at step one, the court must turn to step two of the *Alice/Mayo* analysis.

## B. *Alice* Step Two

Facebook argues that the asserted claims of the patents-in-suit add nothing of patentable significance. (D.I. 10 at 17-20) Hyper Search counters that when considered as an ordered combination, the asserted claims pass the second step of *Alice*. (D.I. 12 at 18-20) Applying the second step of the *Alice* framework to the asserted claims, the court recommends that the asserted claims lack an inventive concept.

The asserted claims of the '219 patent do not recite any inventive concept, but recite the performance of the abstract idea on well-known computer components and processes, such as a "server," "a plurality of clients," "a network," "template storage means," and "home page creating means." ('219 patent, col. 13:4-19, 14:15-35) These are generic descriptions of computer components and functions that do not rise to the level of inventive concept. *Content Extraction*, 776 F.3d at 1347-48 (a computer in a computer implemented invention "must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry'" to be meaningful) (citing *Alice*, 134 S. Ct. at 2359). Additionally, the means-plus-function limitations in the asserted claims do not render them patent eligible because the specification describes generic, well-known computer hardware and software components. ('219 patent, col. 3:65-5:46)

Similarly, the claims of the '840 patent describe providing a summary of information in a graphical format without adding any inventive concept related to the system used to carry that idea out. The claims recite conventional software components, such as a "browser interface," "URL," "web crawler," and "web page renderer," but do not provide any inventive step that makes those components more useful to a user. ('840 patent, col. 11:17-39) Moreover, the specification states that the recited components have been known, and include browsers such as

19

MOSAIC, search engines such as ALTAVISTA or YAHOO!, and the "web document rendering engine[s]" licensed from Netscape Communications Corp. or Spyglass Corp. that save virtual images of webpages with embedded hyperlinks intact. (*Id.* at col. 1:49-52, 4:25-31, 4:62-65, 5:61-6:20)

Claim 1 of the '412 patent recites generic computer functionality such as a "neural network module" and a "server." ('412 patent, col. 19:49-67) Limiting the use of an abstract idea "to a particular technological environment" does not transform an abstract idea into a patent-eligible invention. *Alice*, 134 S. Ct. at 2358 (internal citations omitted). The specification states that neural networks were well-known in the art, and the inventors stated that the alleged invention is not limited to neural networks but rather to "any artificial intelligence agent." ('412 patent, col. 7:45-8:5, 19:23-27) Courts have previously found that claims reciting neural networks to be unpatentable for failing to recite more than an abstract idea. *See Neochloris, Inc. v. Emerson Process Mgmt LLLP*, 140 F. Supp. 3d 763, 773 (N.D. Ill. 2015) (finding patent claims including "an artificial neural network module" invalid under § 101 because neural network modules were described as no more than "a central processing unit – a basic computer's brain").

Hyper Search relies on *Bascom* for the notion that so long as the patent specification "describes how its particular arrangement of elements is a technical improvement over prior art," a known concept may still be patent eligible. (D.I. 12 at 18-19) (quoting *Bascom*, 827 F.3d at 1350) Here, Hyper Search does not identify any such example in the specifications in the patents-in-suit, and does not show how any of the prior elements are particularly arranged in the claimed inventions such that they improve the performance of the computer itself. (*See* D.I. 12 at 18-19) Hyper Search's reliance on *Zak v. Facebook, Inc.*, 206 F. Supp. 3d 1262 (E.D. Mich.

2016) and *ART+COM Innovationpool GmbH v. Google Inc.*, 183 F. Supp. 3d 552 (D. Del. 2016) is also inapposite. (D.I. 12 at 19-20) In *Zak*, the court found the claims to be patent eligible because they offered a solution to a business challenge by allowing ordinary users to maintain dynamic websites by managing the content of websites and controlling users' interactions with a web page, as explained by the specification. *Zak*, 206 F. Supp. 3d at 1273. In *ART+COM*, the court held that an ordered combination of claims directed to a software-implemented method for providing a pictorial representation of space-related data recited not merely what a computer does, but a "specific procedure that is done by a computer," and was therefore patent eligible under the second step of *Alice*. *ART+COM*, 183 F. Supp. 3d at 555-56, 559-60 (D. Del. 2016). However, Hyper Search does not identify any concrete improvements to specific computer functionality or solutions rooted in problems that only existed on computers, but instead generally asserts that "each of the asserted claims is directed to solving a computer-related problem." (D.I. 12 at 20)

"Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Elec. Power Grp.*, 830 F.3d at 1355 (internal citations omitted). Therefore, I recommend finding that the patents-in-suit fail *Alice* step two and consequently recommend granting Facebook's motion to dismiss.

## V. CONCLUSSION

For the foregoing reasons, I recommend that the court grant Facebook's motion to dismiss the complaint pursuant to Rule 12(b)(6). (D.I. 9)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: December 17, 2018

Sherry R. Fallon
United States Magistrate Judge