# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HYPER SEARCH, LLC, | |
| Plaintiff, | C.A. No. 17-1387-CFC-SRF |
| v. | |
| FACEBOOK, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**HYPER SEARCH, LLC'S OBJECTIONS TO THE
REPORT AND RECOMMENDATION ISSUED BY MAGISTRATE
JUDGE SHERRY R. FALLON ON DECEMBER 17, 2018**

Timothy Devlin (DE 4241)
1306 N. Broom Street, First Floor
Wilmington, DE  19806
(302)-449-9010
tdevlin@devlinlawfirm.com
Attorneys for Plaintiff
Hyper Search, LLC

Dated:  January 2, 2019

# TABLE OF CONTENTS

I.    Introduction ......................................................................................................... 1

II.   Background .......................................................................................................... 1

III.  Legal Standard .................................................................................................... 1

IV.   Objections and Argument ................................................................................... 2

  A.  The Report Incorrectly Concluded that Hyper Search Did Not Identify Any Claims
Construction Issues or Facts in Dispute ............................................................... 2

  B.  The Report Incorrectly Considered the '219, '840, and '412 Patents Under Alice Step One
............................................................................................................................... 5

  C.  The Report Incorrectly Considered the '219, '840, and '412 Patents Under Alice Step
Two ....................................................................................................................... 8

  D.  Hyper Search Objects to the Extent that the Report's Recommendation Applies to All
Claims of the Patents in Suit ............................................................................... 10

V.    Conclusion .......................................................................................................... 10

# TABLE OF AUTHORITIES

**Case**                                                                                    **Page(s)**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
Civ. No. 2017-1452, 2018 U.S. App. LEXIS 3463
(Fed. Cir. Feb. 14, 2018)........................................................................2,3,4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014)...............................................................................5

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016)................................................................4,8

*Berkheimer v. HP Inc.*,
No. 2017-1437, 2018 U.S. App. LEXIS 14388
(Fed. Cir. May 31, 2018) .........................................................................2,3,4

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*, Inc.,
145 F.3d 1303 (Fed. Cir. 1998)....................................................................3

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)........................................................... *passim*

*Green Mountain. D.E. v. Cent. Dauphin Sch. Dist.*,
765 F.3d 260 (3d Cir. 2014).........................................................................3

*Taberer v. Armstrong World*
*Indus. Inc.*, 954 F.2d 888 (3d Cir. 1992)......................................................1

*Umland v. PLANCO Fin. Servs.*,
542 F.3d 59 (3d Cir. 2008)...........................................................................7

# OTHER AUTHORITIES

Fed. R. Civ. P. 72(b)(2)................................................................................1

Fed. R. Civ. P. 72(b)(3)................................................................................2

35 U.S.C. § 112(f)........................................................................................3

## I.      INTRODUCTION

Judge Sherry R. Fallon's Report and Recommendation (herein "Report") recommended

that Defendant Facebook, Inc.'s ("Defendant" or "Facebook") motion to dismiss under 35 U.S.C.

§ 101 be granted with respect to all asserted claims of U.S. Patent Nos. 6,085,219 ("the '219

patent"), 6,271,840 ("the '840 patent"), and 6,792,412 ("the '412 patent") (collectively, "patents

in suit").  Plaintiff Hyper Search, LLC ("Plaintiff" or "Hyper Search") objects to the Report's

findings for the following issues:

1.  Although the Report found that Hyper Search "does not identify any claim
    construction issues that need resolution or any facts in dispute[,]" (D.I. 21 at 9) there
    is sufficient evidence demonstrating that this finding is incorrect;

2.  The Report erred with respect to its *Alice* Step One ("Step One") analysis because
    each of the asserted claims of the patents in suit is "directed to" a specific computer-
    centric innovation that improves computer technology;

3.  The Report erred with respect to its *Alice* Step Two ("Step Two") analysis because
    each of the patents in suit recites an inventive concept sufficient to transform the
    claimed abstract idea into a patent-eligible application.

## II.     BACKGROUND

On January 10, 2018, Facebook moved to dismiss this action alleging that the patents in

suit were directed to unpatentable subject matter pursuant to 35 U.S.C. § 101.  (D.I. 9.)  The

Court heard oral argument on June 11, 2018.  On December 17, 2018, the Court issued the

Report, recommending that the asserted claims of the patents in suit be dismissed pursuant to 35

U.S.C. § 101.  (D.I. 21.)

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(b), the Court reviews a magistrate judge's

report and recommendation *de novo*.  Fed. R. Civ. P. 72(b)(2); *Taberer v. Armstrong World*

*Indus. Inc.*, 954 F.2d 888, 904 (3d Cir. 1992).  "The district judge may accept, reject, or modify

the recommended disposition; receive further evidence; or return the matter to the magistrate

judge with instructions." Fed. R. Civ. P. 72(b)(3).

## IV.    OBJECTIONS AND ARGUMENT

### A.    The Report Incorrectly Concluded that Hyper Search Did Not Identify Any Claims Construction Issues or Facts in Dispute

At the outset of its discussion, the Report asserts that Hyper Search "does not identify any claim construction issues that need resolution or any facts in dispute." (D.I. 21 at 9.) This assertion is incorrect on both points. Plaintiff has identified claim construction issues in the form of means plus function language such as that found in asserted claim 5 of the '219 Patent. (D.I. 12 at 3, 10; D.I. 1, Ex. A at 13:4-23.) Plaintiff has also pointed to numerous factual issues arising from the pleadings and the specifications of the patents in suit. (D.I. 12 at 3-8 (citing how each of the patents in suit improves computer functionality); D.I. 1 at ¶¶ 21-38, 50-64, 71-89; Ex. A, 13:4-19, 14:15-35; Ex. C, 11:17-39; Ex. E, 19:49-67.)

These facts demonstrate that each of the patents in suit teach a specific computer-centric invention that improves computer technology – the hallmark of patentability for computerized inventions. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). The Report fails to properly consider these facts under the teachings of *Berkheimer v. HP Inc.*, No. 2017-1437, 2018 U.S. App. LEXIS 14388, at *5 (Fed. Cir. May 31, 2018) and *Aatrix Software, Inc. v. Green Shades Software, Inc.*, Civ. No. 2017-1452, 2018 U.S. App. LEXIS 3463, at *12-13 (Fed. Cir. Feb. 14, 2018), and should be rejected.

Regarding claim construction issues, with the exception of one citation to a District of Massachusetts ruling, the Report largely ignores the importance of construing means plus function language, such as the language contained in claim 5 of the '219 patent (D.I. 12 at 3, 10; D.I. 1, Ex. A at 13:4-23), before ruling on Section 101 invalidity. (D.I. 21 at 9-10.) The Report also ignores that it is Facebook's burden to show that the only plausible construction is directed

to patent-ineligible subject matter – not Hyper Search's burden.  *Green Mountain. D.E. v. Cent.*

*Dauphin Sch. Dist.*, 765 F.3d 260, 271 (3d Cir. 2014).

Under the means-plus-function framework, each of the means plus function terms recited

in the claim includes only "the corresponding structure, material, or acts described in the

specification and equivalents thereof."  35 U.S.C. § 112(f).  It is the Court's role to identify that

"corresponding structure" and the jury's role to identify their "equivalents."  *See Chiuminatta*

*Concrete Concepts, Inc. v. Cardinal Indus.*, Inc., 145 F.3d 1303, 1308 (Fed. Cir. 1998).

If the Court were to construe the claims under Section 112(f), their scope would differ

dramatically from the "generic" label that the Report attributes to them.  (D.I. 21 at 19.)  Rather

than being limited only by their recited functions, each of the recited mean plus function terms

would be limited to the particular algorithms disclosed within the specification.  For example,

Figure 9 shows a flow chart of a part of the home page creating process performed by the

terminal 1a in this embodiment.  Figure 10 shows a flow chart of a part of the home page

creating process performed by the WWW server 2. Those flow charts are advanced in a dialog

type cooperative manner."  (D.I. 1, Ex. A at 6:35-40, Figs. 9–10.)

Moreover, the pleadings and asserted facts give rise to a number of facts in dispute that

should be given proper consideration when performing a Section 101 analysis.  *Berkheimer*,

2018 U.S. App. LEXIS 14388, at *17; *Aatrix*, 2018 U.S. App. LEXIS 3463, at *12-13.  As well

pled in the Complaint, the asserted claims are directed to concrete technological solutions that go

far beyond the routine or conventional use of computers.  (See D.I. 12 at 2-8; D.I. 1 at ¶¶ 21-38,

50-64, 71-89.)  For example, regarding the '219 patent, the Complaint states the '219 Patent

overcame prior transmission time and knowledge gap disadvantages in the field "by describing

and enabling a system, method, and apparatus for creating a home page easily, without requiring

users to have special knowledge of the home page template creation process, with a home page display system capable of reducing the time required for sending a home page." (D.I. 1 at ¶ 28 (citing D.I. 1, Ex. A at 1:42–48).) The other Counts assert similar facts for the other patents. (D.I. 1 at ¶¶ 50-64, 71-89.)

Under Rule 12, patent eligibility can be determined "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 2018 U.S. App. LEXIS 3463, at *6. Plausible factual allegations prohibit dismissal at this stage: "plausible factual allegations may preclude dismissing a case under § 101 where, for example, 'nothing on th[e] record . . . refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6).'" *Aatrix*, 2018 U.S. App. LEXIS 3463, at *6-7 (citing *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016); *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016)).

The Report plainly gives improper treatment to the facts discussed above. Accordingly, the Report fails in its Rule 12 analysis. *See Aatrix*, 2018 U.S. App. LEXIS 3463, at *14 (holding that there was no proper basis for rejecting concrete allegations regarding the claimed combination's improvement to the functioning of the computer).

Moreover, in *Berkheimer*, the Federal Circuit held "whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination. Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Berkheimer*, 2018 U.S. App. LEXIS 3040, at *17, 18.

The record thus involves multiple factual disputes about whether the asserted claims are well-known, routine, and conventional, as set forth in Hyper Search's pleadings and briefing. (D.I. 1 at ¶¶ 21-38, 50-64, 71-89.)  At a bare minimum, there is factual dispute here about whether the asserted claims of each asserted patent recite computerized systems that were unconventional at the time and which improved computer functionality.  (D.I. 1 at ¶¶ 21-38, 50-64, 71-89.)  Accordingly, under *Berkheimer* and *Aatrix*, it would be inappropriate to find any asserted claim unpatentable at this juncture.

**B.**     **The Report Incorrectly Considered the '219, '840, and '412 Patents Under Alice Step One**

The Report states that "Hyper Search does not directly dispute that ***the ideas reflected in the asserted claims*** are abstract, but rather argues that the patents-in-suit are patent-eligible because their specifications provide 'improvements in computer functionality.'"  (D.I. 21 at 11 (citing D.I. 12 at 3-8) (emphasis added).)  The emphasized text above demonstrates the step one error that permeates the Report.  "Ideas reflected in the claims" is not the appropriate test. Rather, the *Alice* framework involves what each claim is "***directed to***," and that determination must account for the claim "as a whole" after one has fairly characterized what the claims are directed to.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).  The aforementioned assertion from the Report also fails to properly consider the teachings of *Enfish* and its progeny.  Each of the patents in suit arises within a computerized field ***and*** improves the operation of the computer.  *Enfish*, 822 F.3d at 1335; (D.I. 1 at ¶¶ 21-38, 50-64, 71-89).

Regarding the '219 patent, the Report states that "Hyper Search does not identify any concrete patent-eligible invention tied to the language of the claims" (D.I. 21 at 11) and suggests that the '219 patented invention can somehow take place outside of a computer environment (D.I. 21 at 13-14).  A plain reading of the claims, specification, and pleadings demonstrate that

these assertions from the Report are incorrect.  (D.I. 1, Ex. A at 13:9–15 (Claim 5), 14:24–30

(Claim 12).)  The pleadings establish that this is a computerized invention improving a

computerized field – there are no "human steps" included in the '219 innovation.  (D.I. 1 at ¶¶

21-38.)  In other words, the '219 patent claims are directed to *Enfish* type computerized claims –

patentable under Section 101.  *Enfish*, 822 F.3d at 1335; (D.I. 1 at ¶¶ 21-38).

    Regarding the '840 patent, the Report states "no such language or features are established

in the claim language" (D.I. 21 at 15) when referring to a "system that improved browser

technology by creating thumbnail and other summary graphic information to accompany

hyperlinks that result at the end of a search engine search."  (D.I. 12 at 8, 16.)  This assertion is

directly contradicted by the claim language of the '840 patent.  Claim 1 refers to a browser

interface (browser technology), summary graphic information (a thumbnail), an embedded

hyperlink and first and second URL (hyperlinks), and a web crawler (search engine).  (D.I. 1, Ex.

C at 11:17-39.)  All of these are purely computer implemented.

    The '840 asserted claims are both directed to a system that improved computerized

browser technology by creating thumbnail and other summary graphic information to accompany

hyperlinks that result at the end of a search engine search.  (D.I. 1 at ¶¶ 51–58 and Ex. C, 11:17–

39, 14:31–48.)  Such graphical information increased the usefulness of search engine results

having a plurality of universal resource locators (URLs) by making review and comparison

visually meaningful.  (D.I. 1 at ¶¶ 51–58 and Ex. C, 11:17– 39, 14:31–48.)  The result of Claim 1

of the '840 patent enables "faster perusal of search engine output on both a hyperlink and

graphical level."  (D.I. 1, Ex. C, 1:7–11.)  As stated in the Complaint:

> By providing a list of hyperlinks as well as graphical representational of reduced images
> of the web pages associated with the hyperlink list, the present invention provides
> enhanced means by which vast amounts of Internet web page information can be
> delivered to the user.  It then becomes an easier task for the user to discriminate between

those links that are of interest and those links which are not based upon the summary graphical provided by the web page renderer.

(D.I. 1, Ex. C, 2:57-65.)  In other words, the '840 patented claims are also directed to *Enfish* type computerized claims – patentable under Section 101.  *Enfish*, 822 F.3d at 1335.

Regarding the '412 patent, the Report states "Hyper Search . . .  has not provided this court with sufficient allegations that its inventions solve problems in the prior art 'in a new way.' Hyper Search's claim relies on technology that was well-known at the time and fails to explain how its claimed idea recites an improvement in computer technology."  (D.I. 21 at 17.)  This assertion places an improper Section 102 or 103 burden on Plaintiff.  Plaintiff has the presumption of validity and all facts in its favor at the 12(b)(6) stage.  *Umland v. PLANCO Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).  In other words, the Report ignores the presumption of validity, and mixes questions of Section 102/103 with Section 101.  Tellingly, the Court references "prior art" but never elaborates on what is meant by this term.

Nonetheless, under a proper Section 101 analysis, Plaintiff has already provided specific examples and well-pled facts demonstrating that the claimed inventions are directed to improved computer technology, all of which the Report ignores.  (*See, e.g.*, D.I. 12 at 5-6; D.I. 1, Ex. E at 2:10-14 (describing how the computerized '412 invention overcame the computerized problems of prior information control systems by describing and claiming a system for delivering information that "selects information for delivery based on indications of what subject matter a recipient is likely to find useful.").)

These improvements are found directly in the claims (D.I. 1, Ex. E at 19:49-67) and in the pleadings.  (D.I. 1 at ¶¶ 70-84.)  In other words, the '412 patented claims are directed to *Enfish* type computerized claims – patentable under Section 101.  If allowed, however, Hyper

Search could offer expert testimony if needed to bolster the fact that the '412 patent is an

inherently computerized invention improving a computerized field.

C.     **The Report Incorrectly Considered the '219, '840, and '412 Patents Under Alice Step Two**

In its Step Two analysis, the Report makes the following assertions specific to each

patent in suit:

- "The asserted claims of the '219 patent do not recite any inventive concept, but recite the performance of the abstract idea on well-known computer components and processes, such as a 'server,' 'a plurality of clients,' 'a network,' 'template storage means,' and 'home page creating means.'" (D.I. 21 at 19.)

- "[T]he claims of the '840 patent . . . do not provide any inventive step that makes those components more useful to a user." (D.I. 21 at 19.)

- "Claim 1 of the '412 patent recites generic computer functionality . . . ." (D.I. 21 at 20.)

Each of these assertions misapplies the facts and law.  Regarding the '219 patent, the

Report lists means plus function language and proclaims it "well-known" yet never construes

those terms.  (D.I. 21 at 19.)  Regarding the '840 patent, the Report improperly suggests that

Hyper Search must demonstrate an "inventive step" as part of its Section 101 burden.  That

requirement is not part of a Section 101 analysis and at any rate Hyper Search has provided

specific allegations in the Compliant and in the briefing regarding the inventiveness of the '840

invention.  (D.I. 1 at ¶¶ 51–58 and Ex. C, 11:17– 39, 14:31–48, 1:7–11, 2:57-65.)

Throughout its Step Two analysis, including its analysis of the '412 patent cited above,

the Report repeatedly makes the same error in its treatment of so-called generic components and

*BASCOM.  BASCOM* teaches that an inventive concept can be found in the non-conventional and

non-generic arrangement of known, conventional, pieces.  *BASCOM Global Internet Servs. v.*

*AT&T Mobility LLC,* 827 F.3d 1341, 1350 (Fed. Cir. 2016).  The Report, however, states "Hyper

Search does not identify any such example in the specifications in the patents-in-suit, and does not show how any of the prior elements are particularly arranged in the claimed inventions such that they improve the performance of the computer itself." (D.I 21. at 20.) This statement is incorrect for each of the patents in suit.

Hyper Search identifies a non-generic arrangement of elements for the '219 patent by citing text earlier in its briefing. (D.I. 12 at 20, 3-4.) For example, Hyper Search identifies the three shortcomings of prior systems – timing, need for expertise, and ease of use – which are discussed in the specification. (D.I. 12 at 3; D.I. 1, Ex. A, 1:50-3:25.) Immediately following that explanation, Hyper Search provides an underlined and color-coded copy of claim 5 demonstrating the unique combination of claim elements that allow the '219 innovation to overcome the prior problems of the computerized prior art. (*See* D.I. 12 at 3 (reproduction of '219 claim 5).) Thus, the Report incorrectly asserts that Hyper Search failed to identify support in the specification and claims demonstrating a unique combination of elements commensurate with an "inventive concept."

Hyper Search performs analogous Step Two analyses for the '840 patent (D.I. 12 at 20, 6-8 (citing the prior problem of the inability to graphically gauge the contents of a web page and the claimed combination of elements that overcomes that problem )), and the '412 patent (D.I. 12 at 20, 5-6 (citing the prior problem of search engines' inability to weed out false "hits" that are not useful to a user and the claimed combination of elements that overcomes that problem)). Accordingly, the Report's failure to appreciate Hyper Search's Step Two arguments and misapplication of *BASCOM* renders its recommendation unavailing and at the very least each of the patents in suit pass Section 101 muster under Step Two.

9

At the conclusion of its Step Two analysis, the Report includes the following two incorrect statements:

- "Hyper Search does not identify any concrete improvements to specific computer functionality or solutions rooted in problems that only existed on computers, but instead generally asserts that 'each of the asserted claims is directed to solving a computer-related problem.'"  (D.I. 21 at 21.)

- "'Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information.'"  (D.I 21 at 21.)

As repeatedly discussed above, Hyper Search has provided ample evidence, both in the pleadings and briefing, that the patents in suit teach computerized innovations that improve computerized technology by using unique arrangements of elements.  Hyper Search, however, is willing to provide additional evidence, such as through expert testimony, if required.

### D.   Hyper Search Objects to the Extent that the Report's Recommendation Applies to All Claims of the Patents in Suit

To the extent the Report directs this Recommendation to all claims of the "patents in suit" and not the asserted claims only, Plaintiff objects to any such Recommendation because the Report is opaque on whether or not its recommendation applies to all claims and Plaintiff never agreed to representative claims.  (*See generally* D.I. 21; D.I. 21.)  Moreover, Defendant's Motion only requests relief on the asserted claims: "Defendant Facebook, Inc. moves to dismiss the Complaint because the asserted claims of the patents-in-suit – U.S. Patent Nos. 6,085,219; 6,271,840 and 6,792,412 – fail to claim patent-eligible subject matter under 35 U.S.C. § 101." (D.I. 9.)

## V.   CONCLUSION

Hyper Search respectfully requests that the Court overrule the Report's recommendation to grant Facebook's motion to dismiss the '219, '840, and '412 patents.

Dated: January 2, 2019

DEVLIN LAW FIRM LLC

/s/ *Timothy Devlin*
Timothy Devlin (DE 4241)
1306 N. Broom Street, First Floor
Wilmington, DE  19806
(302)-449-9010
tdevlin@devlinlawfirm.com

*Counsel for Hyper Search, LLC*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic filing on January 2, 2019.

/s/ Timothy Devlin
Timothy Devlin